SCANNED at WVCF and Emailed on
11-24-20 by SG 8 pages.
(date)    (initials)  (num)

SHORT RECORD
NO. 20-3273
FILED 11/24/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

FILED

11/24/2020

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

RYAN T. MCMULLEN

    PETITIONER

                    NO. 2:19-cv-00356-JRS-MJD

V.

RICHARD BROWN

    WARDEN

## NOTICE OF APPEAL

Notice is hereby given Ryan T. McMullen, Petitioner in the above named case, hereby appeals to the United States Court of Appeals for the Seventh Circuit from the final judgement entered by the Court in this action on the 23rd day of October, 2020

Dated 11 / 19 / 2020

Ryan McMullen

Ryan McMullen, pro se

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

**FILED**

**11/24/2020**

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

RYAN T. MCMULLEN
      Petitioner

)
)
)
)
)
)
)  NO. 2:19-cv-00356-JRS-MJD
)
v. )
)
)
RICHARD BROWN )

## DOCKETING STATEMENT

Comes now Petitioner Ryan McMullen, pro se, and pursuant to Seventh Circuit Rules 3(c)(1) and 28(a), provides the following information:

1. Petitioner filed a pro se petition for writ of habeas corpus challenging the constitutional validity of his state court convictions and sentence

2. This Court's jurisdiction to entertain Petitioner's

application for a writ of habeas corpus is authorized by 28 U. S. C. subsections 2241 and 2254.

3. On October 23, 2014, the Court issued a final judgement denying Petitioner habeas corpus relief.

4. This Court is authorized to issue a Certificate of Appealability pursuant to Fed. R. App. P. 22(b). The U.S.D.C. did issue a Certificate of Appealability as to the Ineffective Assistance at Sentencing claim filed by Petitioner, which will enable Petitioner to appeal this Courts final judgement to the United States Court of Appeals for the Seventh Circuit.

5. Petitioner is presently confined in custody of Respondent.

6. Petitioner is tendering for filing simultaneously with the instant docketing statement his Notice of Appeal and his Motion for Appointment of Counsel On subsection 2254 Appeal and his Petition for Leave To FILE AND PROCEED on Appeal IN Forma Pauperis.

DATED: __11__ / __19__ / __2020__          Ryan McMullen
                                                          Ryan McMULLEN, PRO SE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| RYAN T. MCMULLEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00356-JRS-MJD |
| | ) | |
| RICHARD BROWN Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORUPUS**

Petitioner Ryan McMullen was convicted of possession of cocaine and possession of marijuana in an Indiana state court and sentenced to 50 years imprisonment. He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mr. McMullen alleges that he received ineffective assistance of trial counsel and appellate counsel. However, the Indiana Court of Appeals reasonably applied federal law when it determined that Mr. McMullen's attorneys were not ineffective. Therefore, Mr. McMullen's petition for a writ of habeas corpus is **denied**.

**I.**
**Background**

Federal habeas review requires the Court to "presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals summarized the relevant facts and procedural history as follows:

> Greentree West Apartments ("Greentree") is a public housing complex in Marion with approximately fifty units. In January 2009, Julie Taylor, Greentree's manager, distributed fliers to the residents advising them of a future pesticide treatment in the units. The lease agreements informed the residents that pesticide treatments would be conducted two times per year. On January 8, 2009, Steve Gause, a

1

maintenance employee at Greentree, was treating Apartment 410 with pesticides and noticed a loaded assault weapon in one of the kitchen cabinets. Gause then contacted a detective with the Joint Effort Against Narcotics Drug Task Force ("the JEAN Team") and reported his observation of the firearm.

Marion Police Detective John Kauffman received an e-mail, warning police officers of a potential safety issue if they were called to Apartment 410. Detective Kauffman knew that Janita Glasser lived at the apartment and that she was the mother of McMullen's children. Detective Kauffman was aware that McMullen had been linked to previous incidents that involved weapons. Detective Kauffman obtained a mug shot of McMullen and showed it to Gause, who confirmed that McMullen had been staying at the apartment. Detective Kauffman discovered that there was an active warrant for McMullen's arrest in an unrelated matter.

Thereafter, JEAN team members went to Greentree to conduct surveillance and serve the arrest warrant on McMullen. McMullen's vehicle was parked near Apartment 410, and Detective Kauffman saw several individuals go into that apartment for short periods of time. Based on his experience as a police officer, Detective Kauffman believed that such conduct was indicative of drug activity. Various members of the JEAN Team were also familiar with McMullen's previous drug and weapons charges. At some point, Detective Kauffman observed a known drug user leave the apartment. Detective Kenneth Allen stopped her vehicle near Greentree and explained that the police were looking for "Pat." Tr. p. 79. The individual said that she had just left Greentree and had spoken with "Ryan" in Apartment 410. Tr. p. 79. Although the woman tried to purchase crack cocaine from "Ryan," who was subsequently identified as McMullen, he refused to sell her any drugs because she had "too much drama." Tr. p. 295.

Several police officers then approached the apartment and one of the detectives looked through the front window blinds that were partially open. Detective Allen looked through the window and saw McMullen sitting on the couch. Thereafter, a detective knocked on the door, held up his police badge, and said, "Ryan, this is the police. We have a warrant for your arrest. Come to the door. Open the door now." Tr. p. 64. McMullen got up from the couch, released the blinds, stepped away from the window, and moved toward the kitchen where Gause had seen the weapon. Tr. at 64–65. The police officers then entered the apartment and took McMullen into custody. Detective Kauffman smelled marijuana and saw an infant on the couch. After releasing the infant to her mother, the officers obtained a search warrant for the apartment.

During the course of the search, the officers recovered nearly eighteen grams of cocaine, one kilogram of marijuana, and a nine millimeter handgun.

2

*McMullen v. State*, 950 N.E.2d 37, 2011 WL 2507057 at *1–2 (Ind. Ct. App. June 23, 2011) ("*McMullen I*").[1]

Mr. McMullen was charged with two counts of possession of cocaine, one count of dealing in cocaine, one count of possession of marijuana, one count of neglect of a dependent, and was alleged to be a habitual offender. *Id.* at *4. After Mr. McMullen unsuccessfully moved to suppress the evidence that the police had discovered during the search, the jury found him guilty of two counts of possessing cocaine and one count of possessing marijuana. *Id.* at *4–6. The trial court entered judgment of conviction for one count of possessing cocaine and one count of possessing marijuana. *Id.* at *3. The trial court sentenced Mr. McMullen to 50 years, citing his lengthy criminal history and his failure to report for incarceration after being released from jail as aggravating factors. *Id.* The sole mitigating factor was the undue hardship that Mr. McMullen's incarceration would have on his dependents. *Id.*

On appeal, Mr. McMullen challenged the admission of the evidence that police discovered during the search and his sentence. *Id.* at *3–6. The Indiana Court of Appeals held that the evidence was admissible and affirmed Mr. McMullen's sentence. *Id.* Mr. McMullen raised both issues in a petition to transfer, which the Indiana Supreme Court denied. Dkt. 6-7, dkt. 6-2 at 5.

Following his direct appeal, Mr. McMullen filed a petition for state post-conviction relief alleging that his trial and appellate attorneys were ineffective. After an evidentiary hearing, the post-conviction court denied his petition. Dkt. 6-8 at 6–7. The Indiana Court of Appeals affirmed, concluding that Mr. McMullen did not receive ineffective assistance from trial or appellate counsel. *McMullen v. State*, 102 N.E.3d 947, 2018 WL 3131420, *14. (Ind. Ct. App. June 27, 2018) ("*McMullen II*").[2] The Indiana Supreme Court subsequently denied transfer. Dkt. 6-9 at 8.

---

[1] *McMullen I* is in the record at Docket 6-6.
[2] *McMullen II* is in the record at Docket 6-13.

Mr. McMullen filed the instant petition for a writ of habeas corpus on July 26, 2019, alleging that his counsel was ineffective at trial, at sentencing, and on appeal.

## II.
## Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted). "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas

court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103). "The bounds of a reasonable application depend on the nature of the relevant rule. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (en banc) (citation and quotation marks omitted).

### III.
### Discussion

A criminal defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed on a claim that

counsel was ineffective, a petitioner must show (1) that counsel's performance "fell below an objective standard of reasonableness" and (2) "that the deficient performance prejudiced the defense." *Id.* at 687−88. Where § 2254(d) applies, courts apply two layers of deference in assessing counsel's performance: "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

The last reasoned opinion at issue here is the Indiana Court of Appeals' decision affirming the denial of Mr. McMullen's petition for post-conviction relief. The Indiana Court of Appeals correctly articulated the *Strickland* standard in Mr. McMullen's post-conviction memorandum decision. *McMullen II*, 2018 WL 3131420 at *3. Mr. McMullen complains about several aspects of trial counsel and appellate counsel's performance. The Court will address each in turn.

### A.  Ineffective Assistance of Trial Counsel at Trial

Mr. McMullen alleges that his trial counsel performed deficiently in several respects throughout trial and that he was prejudiced by the cumulative effect of those errors. The Indiana Court of Appeals analyzed the errors individually and examined the cumulative impact that any errors may have had.

### i.      Failure to Call Witnesses

Mr. McMullen's defense theory at trial was that someone else had placed the cocaine in the cabinet; he admitted the marijuana was his because his fingerprints were recovered from the packaging. DA Tr. 189. For the reasons explained in more detail below, the Indiana Court of

Appeals reasonably determined that trial counsel was not ineffective for failing to call three witnesses.

### a.  Stephen Gause

Stephen Gause was the property manager at Greentree who set the investigation into motion. Mr. McMullen alleges that counsel's failure to call Mr. Cause was deficient because (1) he referenced Mr. Gause's expected testimony in his opening statement, and (2) Mr. Gause would have testified that he saw only a firearm in the cabinet. According to Mr. McMullen, this would have supported the defense theory that someone else placed the cocaine in the cabinet.

As the Seventh Circuit recently observed, "[m]aking false promises about evidence in an opening statement is a surefire way for defense counsel to harm his credibility with the jury." *Myers v. Neal*, --- F. 3d ---, 2020 WL 5552196, *7 (7th Cir. Aug. 4, 2020) (deficient assistance is prejudicial when absent cumulative effects of counsel's shortcomings "there is a 'reasonable probability' that the trial would have come out differently") (citing *Strickland,* 466 U.S. at 694). But the Indiana Court of Appeals reasonably concluded that trial counsel's failure to call Mr. Gause was not even deficient.  Trial counsel stated during opening statement that, "Mr. Steve Gause who is a Greentree employee, uh, is in the apartment spraying for bugs … [a]nd he opens the cabinet and he notices the firearm described in the cabinet and that's all he sees. And that's at one p.m. And there's nothing else in that cabinet except the firearm." DA Tr. 190.[3] As the Indiana Court of Appeals observed, trial counsel did not explicitly promise that he was going to call Mr. Gause as a witness.

Further, trial counsel testified at the post-conviction hearing that his decision not to call Mr. Gause as a witness was tactical. He testified that he "would've wanted him on cross examination and not on direct," because if the State was provided the opportunity to cross examine Mr. Gause,

---

[3] The Court will cite to the trial court transcript as "DA Tr." and the post-conviction hearing transcript as "PCR Tr."

it would have been able to elicit harmful testimony about "why he was interested in this particular apartment." PCR Tr. 9–10. When an attorney "articulates a strategic reason for a decision that was sound at the time it was made, the decision cannot support a claim of ineffective assistance of counsel." *Yu Tian Li v. United States*, 648  F.3d 524, 528 (7th Cir. 2011). Thus, trial counsel's decision not to call Mr. Grause was not deficient performance.

### b.  James Johnson

James Johnson is Mr. McMullen's cousin. If Mr. Johnson had been called as a witness, he would have testified that he went to the apartment between 3:00 and 3:30 in the afternoon with five other individuals, and shortly after his arrival he saw the firearm and marijuana in the cabinet but no cocaine. Dkt. 7-9 at 39, ¶ 2. He further would have testified that a man whose name he could not recall kept going back and forth to the cabinet and, during that time, Mr. McMullen remained in the living room caring for his baby. *Id.* at 39, ¶¶ 5–6.

Trial counsel testified that he did not interview any of the people who were at the apartment that day but that he should have. PCR Tr. 11. The Indiana Court of Appeals bypassed whether this decision was deficient because it determined Mr. McMullen could not prove he was prejudiced by the failure to call Mr. Johnson for three reasons. First, Mr. Johnson's testimony would not show that someone other than Mr. McMullen put the cocaine in the cabinet because he did not allege that he actually saw anyone else do so. *McMullen II*, 2018 WL 3131420 at *5. Hence, his testimony would have been cumulative of other testimony at trial that at least five other people were at the apartment the day of Mr. McMullen's arrest. *Id.* Second, because Mr. Johnson is Mr. McMullen's cousin, the State would have been able to attack his testimony as biased. *Id.* Third, even assuming Mr. Johnson's testimony was true, because Mr. McMullen was not arrested until 6:30 p.m., there was still plenty of time for him to place the cocaine in the cabinet.  *Id.*

The Indiana Court of Appeals' assessment was reasonable. There is no reasonable probability that Mr. Johnson's vague testimony would have changed the outcome of the trial.

### c. Gerald Griffin

Gerald Griffin drove Michelle Garrett to Mr. McMullen's apartment and was pulled over by police after leaving the apartment. Mr. McMullen alleges that Mr. Griffin should have been called to testify that Ms. Garrett asked for a ride so that she could confront Mr. McMullen about a rumor that had gotten back to her husband. Mr. Griffin would have testified that Ms. Garrett never mentioned wanting to buy drugs from Mr. McMullen and that Mr. McMullen asked her to leave because he "did not want to be involved in her marriage." Dkt. 7-9 at 41. Mr. McMullen believes this testimony could have undermined Ms. Garrett's testimony that she went to the apartment to buy cocaine.

The Indiana Court of Appeals reasonably concluded that trial counsel was not ineffective for failing to call Mr. Griffin. *McMullen II*, 2018 WL 3131420 at *5. The information he would have provided was not inconsistent with Ms. Garrett's testimony at trial, where she testified there were rumors about her relationship with Mr. McMullen and he refused to sell her cocaine because she had "too much drama." DA Tr. 295–96. There is no reasonable probability Mr. Griffin's testimony would have changed the outcome at trial.

### ii.    Failure to Object to Evidence

Next, the Indiana Court of Appeals examined Mr. McMullen's allegations that trial counsel was ineffective for failure to object to several pieces of evidence during trial. *McMullen II*, 2018 WL 3131420 at *6. The Indiana Court of Appeals correctly recognized that trial counsel's performance could not have been deficient if the unraised objection would not have been sustained. *See Jones v. Brown*, 756 F.3d 1000, 1008-09 (7th Cir. 2014) ("If evidence admitted without

objection is, in fact, admissible, then failing to object to that evidence cannot be a professionally 'unreasonable' action.") (internal quotation marks and citations omitted). It also correctly recognized that, even if an objection would have been sustained, Mr. McMullen would still have to show that but for the failure to object, the outcome of his trial would have been different. *McMullen II*, 2018 WL 3131420 at *6.

### a. McMullen's Arrest Warrant

The police arrested Mr. McMullen at the apartment due to an arrest warrant for failure to appear for an unrelated matter. Before trial, the court held a hearing on Mr. McMullen's motion to suppress and the State's intent to introduce evidence of the warrant. During the hearing, trial counsel objected to the State introducing evidence of the arrest warrant, citing Indiana Rule of Evidence 404(b). DA Tr. 132. Rule 404(b) provides in relevant part, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." The trial court ruled that the fact of the arrest warrant was admissible but that the facts or charges of the underlying case were not. Dkt. 7-1 at 31.

At trial, when the State began to elicit information about the arrest warrant, trial counsel objected, stating, "I request that the testimony and arguments, uh, at our pre-trial hearing be incorporated by referencing this motion, uh, in order to avoid repeating myself I would like to have this motion shown as a continuing objection." DA Tr. 195. The trial court overruled the objection. Three detectives alluded to the warrant during trial, testifying that Mr. McMullen was arrested on January 8, 2009, for the outstanding warrant, DA Tr. 195, 376; that he was not arrested in this case until May of 2009 because the police "knew he was going to be held on the unrelated matter," DA Tr. 380; and that he was a "wanted suspect," DA Tr. 246.

The Indiana Court of Appeals found that trial counsel "*did* make a continuing objection to

evidence of McMullen's arrest warrant since it was covered at the hearing on the motion to suppress," and therefore his performance was not deficient. *McMullen II*, 2018 WL 3131420 at *6 (emphasis in original). The court's conclusion that Mr. McMullen's continuing objection covered both the motion to suppress and the objection to evidence about the arrest warrant is a resolution to a state-law question. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Wilson v. Corcoran*, 526 U.S. 1, 5 (2010) (citation and quotation marks omitted); *see also Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016) ("A federal court cannot disagree with a state court's resolution of an issue of state law."). Such is true even when, as here, it is embedded in an ineffective assistance of counsel claim. "Although claims of ineffective assistance of counsel can be premised on an attorney's failure to raise state-law issues, federal courts reviewing such claims must defer to state-court precedent concerning the questions of state law underlying the defendant's ineffectiveness claim." *Shaw v. Wilson*, 721 F.3d 908, 914 (7th Cir. 2013) (citations omitted). Because the Indiana Court of Appeals' decision regarding the objection rests on state law grounds, this Court will not review it.

Mr. McMullen also alleged that trial counsel was ineffective for not requesting a limiting instruction advising the jury that evidence about the warrant was only admissible to explain the officers' actions. The Indiana Court of Appeals found that asking for a limiting instruction was "the preferred practice" but found that Mr. McMullen failed to prove prejudice. *McMullen II*, 2018 WL 3131420 at *7. The court reasoned that "[t]he jury's knowledge that McMullen had an outstanding arrest warrant has nothing to do with the crimes he was convicted of. It simply provided the jury with additional context as to why McMullen was arrested on January 8, 2009." *Id.* In light of the evidence against Mr. McMullen, this was not an unreasonable conclusion.

11

### b. Prior Bad Acts

Mr. McMullen next alleges that trial counsel should have objected to Ms. Garrett's testimony regarding alleged prior drug sales under Rule 404(b). Ms. Garrett's testimony was as follows:

> State: Had you been at [the apartment] on one or more occasions?
>
> Garrett: I went one other time.
>
> State: One other time. Uh, did you always meet with the defendant, Ryan McMullen?
>
> Garrett: Yes.

DA Tr. 296. The Indiana Court of Appeals found this testimony was not objectionable because Ms. Garrett was not asked and did not testify that she ever previously purchased cocaine from Mr. McMullen. The Court agrees—trial counsel was not ineffective for failing to object to admissible evidence. *Jones*, 756 F.3d at 1008-09.

### c. Jail Calls and Letter

Mr. McMullen next argues that trial counsel should have objected under Rule 404(b) to jail calls in which he referenced his pending charge for failure to appear and his arrest warrant and a letter that Mr. McMullen had written from jail four years earlier that alluded to selling drugs.

Trial counsel testified that he did not think of objecting to these portions of the phone calls or request that they be redacted. PCR Tr. 13. The Indiana Court of Appeals held that trial counsel was not ineffective for failing to object to the portions of the phone calls where Mr. McMullen referenced his arrest warrant for failure to appear because, since evidence about the warrant had already been admitted, Mr. McMullen's statements were cumulative, and further the admission did "nothing to undermine McMullen's conviction on completely unrelated evidence and charges." *McMullen II*, 2018 WL 3131420 at *8.

Because the Indiana Court of Appeals previously decided that trial counsel had objected to the detectives' testimony about the arrest warrant, it did not decide whether the testimony about the arrest warrant was admissible, finding Mr. McMullen had waived the argument. *Id.* at *6, fn. 2 ("To the extent McMullen argues that the trial court erred when it allowed the State to introduce evidence of McMullen's arrest warrant, … this issue is waived because it was available at the time he filed his direct appeal."). Thus, the determination that the admission of Mr. McMullen's statements in the jail calls was merely cumulative is not helpful if evidence of his warrants should have been excluded. However, the Court agrees that Mr. McMullen cannot show he was prejudiced by his passing references to his arrest warrant for failure to appear in light of the evidence against him.

Trial counsel did not object to a letter that Mr. McMullen had written to his girlfriend from jail four years earlier. The letter stated in part, "I am gone [sic] get a job and sell weed and x. No more cocaine." Dkt. 7-3 at 43. The Indiana Court of Appeals found that the letter was admissible because it referenced *future* drug-related activity and was therefore relevant to his offenses in this case. *McMullen II*, 2018 WL 3131420 at *9. It further found that the statement in the letter actually supported Mr. McMullen's theory that he was selling only marijuana and not cocaine, and regardless, it was cumulative of other evidence. *Id.* Because the court's determination that the letter was admissible relied on state law, this Court cannot review this claim. *Shaw*, 721 F.3d at 914.

### d.  Witness Testimony

Mr. McMullen alleges that trial counsel should have objected to testimony from a detective who testified about whether particular facts—ownership of scales, higher quantities of drugs, etc.—were more or less consistent with dealing drugs and testimony that law enforcement had conducted drug investigations at Greentree Apartments in the past. The Indiana Court of Appeals

held that this testimony was admissible and therefore trial counsel was not ineffective for failing to object. Again, because this determination rests on state law grounds, the Court cannot review the claim.

### e. Cumulative Error

When a court identifies multiple instances of deficient performance by trial counsel, it must consider the cumulative impact of the errors when determining whether the defendant suffered prejudice. *Sussman v. Jenkins*, 636 F.3d 329, 360–61 (7th Cir. 2011). Although the Indiana Court of Appeals did not specifically find that trial counsel had performed deficiently, there were certain issues in which the court bypassed the performance prong and looked only at prejudice. Thus, the court still analyzed whether "any of [trial counsel's] alleged errors cumulatively did substantial damage to McMullen's defense, i.e. that someone else placed the cocaine in the cabinet." *McMullen II*, 2018 WL 3131420 at *13. The court summarized the evidence against Mr. McMullen:

> The jury heard testimony from Garrett that she went to the apartment to buy cocaine from McMullen on January 8, 2009. Officers then watched as at least five individuals went in and out of the apartment for short periods of time—conduct that is indicative of drug related activity. When officers executed the search warrant on the apartment, they obtained nearly eighteen grams of cocaine, one kilogram of marijuana, a nine-millimeter handgun, and a digital scale. Although there was no identifiably available fingerprints or DNA found on the baggie of cocaine, the State established that the DNA found on the baggie of marijuana was consistent with McMullen's DNA. And McMullen's fingerprints were found on the baggie of marijuana. All of the items were located next to each other in a kitchen cabinet. McMullen was also alone in the apartment with an infant when the search warrant was executed.

*Id.* Additionally, Mr. McMullen made a host of incriminating statements on the jail calls, referencing "white bitch," a slang term for cocaine, asking his child's mother to locate "Christmas presents" despite none being found in the search, and stating he knew he was going to be charged with an A felony. DA Tr. 444–45. The Indiana Court of Appeals found no cumulative error.

14

The Court agrees. Given the strength of evidence against Mr. McMullen, the Indiana Court of Appeals' determination that all potential errors combined did not prejudice him was not unreasonable.

### B. Ineffective Assistance of Trial Counsel at Sentencing

Mr. McMullen alleges that trial counsel was ineffective at sentencing because he failed to conduct a reasonable investigation into Mr. McMullen's background, arrange for Mr. McMullen to be evaluated by a mental health professional, and failed to present sufficient evidence of mitigating circumstances.

At the post-conviction evidentiary hearing, trial counsel testified that he did not develop mitigation beyond what was included in the presentence investigation report (PSR). PCR Tr. 15. Trial counsel was trained in representing capital clients, so he understood the importance of mitigation. *Id.* at 16. He did not petition the court for money to be able to conduct a mitigation investigation and acknowledged he "probably should have." *Id.* He had presented mitigation in non-capital cases with success, but did not think "that mitigation would stack up" in this case. *Id.* He did not consider requesting a mental health evaluation. *Id.*

The PSR mentioned Mr. McMullen's troubled childhood. Mr. McMullen told the probation officer who prepared the report that he was raised by his mother until age seven when he "was placed with his grandmother." Dkt. 8 at 14. He stated both his parents had criminal records. *Id.* Mr. McMullen stated he had never been diagnosed with a mental health disorder but was concerned about depression. *Id.* at 16. He had received counseling while placed at the Youth Opportunity Center (YOC) as a juvenile delinquent and after he was "removed from his mother's care due to abuse." *Id.* at 16. Mr. McMullen also mentioned that his mother had a boyfriend who abused his mother, sister, and him. *Id.* at 18.

15

At the sentencing hearing, the trial court noted that it had reviewed the PSR. DA Tr. 490. Trial counsel presented a brief argument, stating Mr. McMullen blamed only himself for his actions and arguing most of Mr. McMullen's criminal history was minor and the multitude of dismissals indicated a pattern of over-charging. *Id.* at 494–95. Trial counsel did not present any evidence about Mr. McMullen's childhood or mental health. However, he stated that, with respect to a test that ranked Mr. McMullen high in criminal thinking because of a need for power and control, "I would also observe that those factors also exist in a person who's been abused and/or neglected and there is reference [in the PSR] regarding a boyfriend who abused him, abused his mother, abused his sister. Uh, I think that, uh, those individuals that have issues of control in their lives are people who have been abused and/or neglected. And so, that need can also be looked at as a mitigator." DA Tr. 495–96. The State argued that Mr. McMullen had been a "menace to this community since he was ten years old. He has no social redeeming factors." *Id.* at 493. The State requested 50 years due to Mr. McMullen's lengthy criminal history and because this crime involved dealing a high quantity of drugs from an apartment with a gun while his baby was present. *Id.*

The Indiana Court of Appeals did not explicitly find that trial counsel's performance was reasonable. *See McMullen II*, 2018 WL 3131420 at *11 ("We initially *note* that [trial counsel] did argue several mitigating circumstances at McMullen's hearing …"). Accordingly, the Court reviews trial counsel's performance *de novo*. *Myers*, 2020 WL 5552196, at *7 (citing 28 U.S.C. § 2254(d) and noting that "[w]hen a state court reaches only one part of *Strickland*'s two-pronged analysis, we review the unaddressed prong *de novo*.").

The Supreme Court has made clear that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688). This includes the "duty to make reasonable

16

investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to make reasonable investigations is present not only before and during trial, but also in preparation for sentencing. *See Pruitt v. Neal*, 788 F.3d 248, 271–73 (7th Cir. 2015). With respect to clients who suffer from a mental illness, when it is "apparent" to defense counsel "that the defendant has some mental or other condition that will repay further investigation . . . then the failure to investigate will be ineffective assistance." *Brown v. Sternes*, 304 F.3d 677, 692 (7th Cir. 2002). Trial counsel acknowledged that he did not conduct any investigation into Mr. McMullen's background despite understanding the importance of developing mitigation at sentencing. Certainly, there were red flags in the PSR that should have prompted trial counsel to delve into Mr. McMullen's background.

The evidence submitted at Mr. McMullen's post-conviction hearing was much more detailed and compelling than the generic references to abuse mentioned in Mr. McMullen's PSR. At the post-conviction hearing, post-conviction counsel submitted affidavits from family members, friends, and a therapist who treated Mr. McMullen as a child. *See generally* dkt. 7-9 (PCR Exhibits). Post-conviction counsel also submitted a psychological report generated at YOC when Mr. McMullen was 13 years old. Dkt. 7-9 at 127–35. Post-conviction counsel retained psychologist Robin Kohli who reviewed the same background materials provided to the court, conducted a variety of tests on Mr. McMullen, and synthesized her findings in a comprehensive report. Dkt. 7-9 at 64–81.

Mr. McMullen's childhood was, in his words, "complete chaos." PCR Tr. 43. His mother was addicted to cocaine and used drugs while she was pregnant with him. Dkt. 7-9 at 66. His father was not involved in his life, and Mr. McMullen was told that his father beat his mother while she was pregnant with him to induce a miscarriage. *Id.* Mr. McMullen's mother had boyfriends that

abused her in front of Mr. McMullen and his sister, including one, named Rodney, who burned her stomach with an iron and another who held a gun to her head in front of the children and asked them why he shouldn't kill their mother right then. *Id.* Rodney also abused Mr. McMullen, kicking, punching, and choking him and throwing him down the stairs. *Id.* When Rodney became particularly abusive, Mr. McMullen tried to call the police and have him arrested for domestic violence and supplying his mother with drugs, to no avail. *Id.* Mr. McMullen was afraid of the police as a child after they conducted several raids where they entered his residence using a battering ram and smoke bombs and held him and his family at gunpoint. *Id.* at 79. Mr. McMullen was eventually placed with his paternal grandmother, who was not physically abusive but did leave him alone on the weekends from the age of seven to eleven while she visited her boyfriend in another city. *Id.* at 67. His childhood trauma caused him to develop migraines at the age of six, and he first experienced suicidal ideation at seven. *Id.* at 22–23, 65. Mr. McMullen began selling drugs as a teenager at the urging of his mother's abusive boyfriend and because he wanted to financially support his mother. *Id.* at 24, 68. Despite his troubled childhood, Mr. McMullen was described as an active father who provided for his children financially and emotionally. *Id.* at 72. Based on his psychosocial history and psychological testing, Dr. Kohli diagnosed Mr. McMullen with panic disorder, posttraumatic stress disorder, substance use disorder, antisocial personality disorder, and possible depressive disorder. *Id.* at 78.

The Court finds that trial counsel's performance at Mr. McMullen's sentencing hearing was deficient. He conducted no independent investigation into Mr. McMullen's background despite red flags in his PSR. *See Porter v. McCollum*, 558 U.S. 30, 40 (2009). As a result, the sentencing court did not have before it a comprehensive view of Mr. McMullen's traumatic childhood and related

mental health issues, nor did it have evidence of his positive characteristics to combat the State's portrayal of him as a "menace" with "no social redeeming factors." DA Tr. 493.

      With respect to the prejudice prong, the Indiana Court of Appeals determined that there was no reasonable probability the evidence uncovered during post-conviction relief proceedings would have changed the outcome of Mr. McMullen's sentence. The court correctly recognized that, when determining whether a defendant is prejudiced by trial counsel's failure to present mitigating evidence at sentencing, the court must examine the totality of the omitted mitigation evidence and compare it with what was presented at his sentencing hearing. *McMullen II*, 2018 WL 3131420 at *11 (citing *McCarty v. State*, 802 N.E.2d 959, 967 (Ind. Ct. App. 2004)); *see also Williams v. Taylor*, 529 U.S. 362, 397–98 (2000) (assessing prejudice at the sentencing phase of a capital trial, the court must "evaluate the totality of the available mitigation evidence—both that adduced at trial, and evidence adduced in the habeas proceeding in reweighing it against the evidence in aggravation."). The appellate court agreed with the trial court's reasoning that the state had expended resources to help rehabilitate Mr. McMullen, which had included "probation, placement at the Youth Opportunity Center, placement at George Junior, cognitive behavioral therapy, behavioral aftercare, POOL School, Family Services Homebased Program, alcohol and drug counseling, and intensive outpatient treatment, in addition to the intermediate punitive sanctions of license suspensions, detention, house arrest, and jail." *McMullen II*, 2018 WL 3131420 at *11. The trial court's decision to sentence Mr. McMullen to the maximum sentence was thus based on his extensive criminal history and his "increasingly troubling behavior" despite prior attempts to rehabilitate him. *Id.* The Indiana Court of Appeals concluded,

> The additional mitigating evidence that McMullen argues could have been offered by his friends and family, *see* Appellant's Br. at 51–52, would not have favorably impacted his sentence. Moreover, that same evidence would have done nothing to

account for or explain the illegal possession of marijuana and cocaine for which McMullen was convicted.

*Id.*

Although the Indiana Court of Appeals identified the correct standard, it is not clear that it reasonably applied the standard to the facts. "A decision involves an unreasonable application of clearly established law if the state court 'identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the prisoner's case.'" *Simonson v. Hepp*, 549 F.3d 1101, 1106 (7th Cir. 2008) (quoting *Williams*, 529 U.S. at 405–06). The court stated, "[B]ecause of the presentence investigation report, the sentencing court was already well aware of McMullen's background and any mental health concerns." *Id.* With only a few references to abuse in the PSR, the sentencing court was *not* aware of the severe nature of Mr. McMullen's childhood trauma or the impact it had on his mental health and behavior. And the court referred only to additional mitigating evidence that would have been provided "by his family and friends." *Id.* The court omitted any mention of Dr. Kohli's comprehensive report or of the diagnoses she made based on her testing.[4] Thus, it is not obvious that the Indiana Court of Appeals actually compared the detailed mitigation evidence presented on post-conviction to the vague references to abuse in his PSR and the uninformed argument related to abuse and neglect made by counsel at his sentencing hearing.

But, as stated above, the issue this Court must decide "is not whether [it] agree[s] with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that

---

[4] The postconviction court also failed to recognize Dr. Kohli's input, stating only that McMullen alleged that trial counsel "should have called a host of friends, family members, and his child therapist to bolster" the argument that his troubled childhood should have been considered mitigating. Dkt. 7-8 at 214.

there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103). The Court cannot say the decision was unreasonably wrong or lacking in justification. Mr. McMullen had a lengthy criminal history, and the details of his crime—dealing drugs from a family housing complex with his baby present—are disturbing. *See McMullen I*, 2011 WL 2507057, at *5–6 (upholding maximum sentence based on nature of offense and Mr. McMullen's extensive criminal history).

Accordingly, even though the Court finds Mr. McMullen's trial counsel performed deficiently at his sentencing hearing, the Court concludes that the state court's decision that he was not prejudiced was not an unreasonable application of federal law. Mr. McMullen is not entitled to relief on this basis.

### C. Ineffective Assistance of Appellate Counsel

"The general *Strickland* standard governs claims of ineffective assistance of appellate counsel as well as trial counsel." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015).

### i.    Motion to Suppress

Mr. McMullen alleges that his appellate counsel failed to effectively challenge the search and seizure evidence on appeal. First, he alleges that appellate counsel omitted several important facts in support of his argument that Mr. Gause was a government agent including: 1) the federal government owned Greentree; 2) Mr. Gause's employer had a contract to manage the apartment complex for the government; 3) Mr. Gause was required by the United States Department of Housing and Urban Development (HUD) to police the complex for crime and report to authorities; and 4) Mr. Gause had an informal relationship with Detective Sands. The Indiana Court of Appeals determined that counsel was not ineffective because on direct appeal, the court "had access to each piece of evidence that McMullen claims [appellate counsel] was ineffective for failing to bring to

this court's attention," and "found that 'the trial court reasonably concluded that Gause was not acting as an agent or instrument for the State when he entered the apartment to spray for pests.'" *McMullen II*, 2018 WL 3131420 at *13 (quoting *McMullen I*, 2011 WL 2507057, at *4).

This was a reasonable application of federal law. Mr. Gause entered the apartment as an escort to an exterminator who sprayed all the apartments at Greentree twice a year. Dkt. 7-2 at 50. He never entered apartments at Greentree at law enforcement's request. *Id.* at 60. Further, tenants were provided a newsletter that informed them of the upcoming pest treatments. DA Tr. 100. Accordingly, this case is distinguishable from *Ferguson v. City of Charleston*, 532 U.S. 67 (2001), upon which Mr. McMullen relied. There, the Supreme Court held that a state hospital's performance of a drug test to obtain evidence of a pregnant patient's criminal drug use was an unreasonable search if the patient had not consented to the procedure. *Id.* at 86. Although the ultimate goal of the program was to get women access to substance abuse programs, "the immediate objective of the search was to generate evidence *for law enforcement purposes*," and the police and local prosecutors were heavily involved in the administration of the program. *Id.* at 82–83 (emphasis in original). Mr. Gause's entry into the apartment was not as a government agent collecting information for possible criminal prosecution but rather was as an apartment manager spraying for insects. Thus, there is no reasonable likelihood that highlighting the above factors about the relationship between HUD and the apartment complex manager—already available to the Indiana Court of Appeals in the record—would have changed the outcome of Mr. McMullen's appeal.

### ii.   Exclusion of Bias Evidence

Mr. McMullen alleges that his appellate counsel should have challenged the exclusion of evidence that witness Michelle Garrett had been charged with drug dealing. DA Tr. 279–81,

299−300. When the claim is poor issue selection, "appellate counsel's performance is deficient under *Strickland* only if [he] fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised." *Makiel*, 782 F.3d at 897.

At trial, Mr. McMullen wanted to elicit testimony that Ms. Garrett had been charged with drug dealing about three to four months after Mr. McMullen's arrest and had been offered a beneficial deal that depended on her successful completion of substance abuse counseling. DA Tr. 279–80, 299–300. The trial court excluded the evidence. DA Tr. 300. The Indiana Court of Appeals found that evidence about Ms. Garrett's drug charge and deal was properly excluded because the deal was "based on her participation in counseling and had nothing to do with her testimony in McMullen's case." *McMullen II*, 2018 WL 3131420 at *14. Further, Ms. Garrett was a known drug user at the time of Mr. McMullen's arrest and had given a statement to the police before she was ever arrested. *Id.* At trial, Ms. Garrett admitted to trying to buy cocaine from Mr. McMullen, an admission that the Indiana Court of Appeals found further diminished any accusation of bias. *Id.* Accordingly, the Indiana Court of Appeals found that appellate counsel did not perform deficiently by failing to challenge the exclusion of admissible evidence. *Id.* "Counsel is not ineffective for failing to raise meritless claims." *Waren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013) (internal citations omitted). The Indiana Court of Appeals reasonably concluded that appellate counsel was not ineffective for failing to raise a meritless claim.

## IV.
## Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing

of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The Indiana Court of Appeals reasonably applied federal law when it analyzed each of Mr. McMullen's ineffective assistance of trial and appellate counsel claims. However, because jurists of reason could disagree with the Court's resolution of Mr. McMullen's ineffective assistance of counsel at sentencing claim, and because the issue deserves encouragement to proceed, a certificate of appealability is **granted** as to that claim.

## V.
## Conclusion

Mr. McMullen's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied**. A certificate of appealability shall issue as to his ineffective assistance of trial counsel at sentencing claim.

Final Judgment in accordance with this decision shall issue.

**IT IS SO ORDERED.**

Date:    10/23/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

24

Distribution:

RYAN T. MCMULLEN
199066
WABASH VALLEY – CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

RYAN T. MCMULLEN,                          )
                                           )
                    Petitioner,            )
                                           )
        v.                                 )        No. 2:19-cv-00356-JRS-MJD
                                           )
RICHARD BROWN Warden,                      )
                                           )
                    Respondent.            )

## **FINAL JUDGMENT**

The Court now enters final judgment. The petitioner's petition for a writ of habeas corpus

is denied, and the action is dismissed with prejudice.


Date: 10/23/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana



Distribution:

RYAN T. MCMULLEN
199066
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov

# *** PUBLIC DOCKET ***

APPEAL,HABEAS,CLOSED

**U.S. District Court**
**Southern District of Indiana (Terre Haute)**
**CIVIL DOCKET FOR CASE #: 2:19-cv-00356-JRS-MJD**

MCMULLEN v. BROWN
Assigned to: Judge James R. Sweeney II
Referred to: Magistrate Judge Mark J. Dinsmore
Cause: 28:2254 Petition for Writ of Habeas Corpus (State)

Date Filed: 07/26/2019
Date Terminated: 10/23/2020
Jury Demand: None
Nature of Suit: 530 Habeas Corpus
(General)
Jurisdiction: Federal Question

**Petitioner**

**RYAN T. MCMULLEN**

represented by **RYAN T. MCMULLEN**
199066
WABASH VALLEY - CF
WABASH VALLEY
CORRECTIONAL FACILITY - Inmate
Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838
PRO SE

V.

**Respondent**

**RICHARD BROWN**
*Warden*

represented by **Jesse R. Drum**
INDIANA ATTORNEY GENERAL
302 West Washington Street
Indiana Government Center South,
Fifth Floor
Indianapolis, IN 46204
317-234-7018
Email: jesse.drum@atg.in.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 07/26/2019 | 1 | PETITION for Writ of Habeas Corpus, filed by RYAN T. MCMULLEN. (No fee paid with this filing) (REO) (Entered: 07/26/2019) |

| 07/26/2019 | 2 | MAGISTRATE JUDGE's NOTICE of Availability to Exercise Jurisdiction issued. (REO) (Entered: 07/26/2019) |
|---|---|---|
| 08/01/2019 | 3 | RECEIPT #IP066089 for Habeas Filing fee in the amount of $5.00, paid by Petitioner. (AKH) (Entered: 08/01/2019) |
| 08/02/2019 | 4 | ORDER TO SHOW CAUSE (State Conviction) - Ryan T. McMullen's petition for a writ of habeas corpus challenges the petitioner's conviction and sentence in Indiana state court case number 27C01-0904-FA-000134. Respondent is ORDERED to enter an appearance by August 7, 2019. If respondent argues that all claims in the petition are subject to one of the procedural bars for dismissal outlined in Rule 5(b), respondent is ORDERED to file a motion to dismiss based on a complete procedural bar by September 11, 2019. If Track 1 does not apply, respondent is ORDERED to answer the petition by October 2, 2019. The Court does not anticipate extending respondent's deadlines absent respondent specifically setting forth extraordinary circumstances (SEE ORDER FOR ADDITIONAL INFORMATION AND DEADLINES) Copy to Petitioner via US Mail. Signed by Judge James R. Sweeney II on 8/2/2019. (DMW) (Entered: 08/02/2019) |
| 08/09/2019 | 5 | NOTICE of Appearance by Jesse R. Drum on behalf of Respondent RICHARD BROWN. (Drum, Jesse) (Entered: 08/09/2019) |
| 10/02/2019 | 6 | RETURN TO ORDER TO SHOW CAUSE, re 4 Order to Show Cause (State Conviction), filed by RICHARD BROWN.. (Attachments: # 1 Exhibit A - CCS, # 2 Exhibit B - DA Dkt., # 3 Exhibit C - DA Appellant's, # 4 Exhibit D - DA Appellee's, # 5 Exhibit E - DA Reply, # 6 Exhibit F - DA Memo Decision, # 7 Exhibit G - DA Pet. to Trans., # 8 Exhibit H - PCR CCS, # 9 Exhibit I - PCR Dkt., # 10 Exhibit J - PCR Appellant's, # 11 Exhibit K - PCR Appellee's, # 12 Exhibit L - PCR Reply, # 13 Exhibit M - PCR Memo Decision, # 14 Exhibit N - PCR Pet. to Trans.)(Drum, Jesse) (Entered: 10/02/2019) |
| 10/02/2019 | 7 | NOTICE of Filing *State Court Record* by RICHARD BROWN (Attachments: # 1 State Court Record, # 2 State Court Record, # 3 State Court Record, # 4 State Court Record, # 5 State Court Record, # 6 State Court Record, # 7 State Court Record, # 8 State Court Record, # 9 State Court Record, # 10 State Court Record, # 11 State Court Record) (Drum, Jesse) (Entered: 10/02/2019) |
| 10/02/2019 | 8 | SEALED *Confidential Appendix*, re 7 NOTICE of Filing, filed by Respondent RICHARD BROWN. (Drum, Jesse) (Entered: 10/02/2019) |
| 11/07/2019 | 9 | MOTION for Extension of Time, filed by Petitioner RYAN T. MCMULLEN. (Attachments: # 1 Exhibit)(TMC) (Entered: 11/07/2019) |
| 11/12/2019 | 10 | ORDER granting 9 Motion for Extension of Time to File a Reply to the Respondent's Return of Order to Show Cause to 11/29/19 - Copy sent to Petitioner via US Mail. Signed by Judge James R. Sweeney II on 11/12/2019. (JRB) (Entered: 11/13/2019) |

| 11/18/2019 | 11 | Reply re 6 Return to Order to Show Cause, filed by RYAN T. MCMULLEN. (TMC) (Entered: 11/19/2019) |
|---|---|---|
| 10/23/2020 | 12 | ORDER DENYING PETITION FOR A WRIT OF HABEAS CORUPUS - Mr. McMullen's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied. A certificate of appealability shall issue as to his ineffective assistance of trial counsel at sentencing claim. Final Judgment in accordance with this decision shall issue. See Order. Copy to Petitioner via US Mail. Signed by Judge James R. Sweeney II on 10/23/2020.(KAA) (Entered: 10/23/2020) |
| 10/23/2020 | 13 | FINAL JUDGMENT - The Court now enters final judgment. The petitioner's petition for a writ of habeas corpus is denied, and the action is dismissed with prejudice. Copy to Petitioner via US Mail. Signed by Judge James R. Sweeney II on 10/23/2020.(KAA) (Entered: 10/23/2020) |
| 11/24/2020 | 14 | NOTICE OF APPEAL as to 13 Closed Judgment, 12 Order, filed by Petitioner RYAN T. MCMULLEN. (No fee paid with this filing) (AAS) (Entered: 11/24/2020) |
| 11/24/2020 | 15 | MOTION to Proceed on Appeal in forma pauperis, filed by Petitioner RYAN T. MCMULLEN. (Attachments: # 1 Exhibit)(AAS) (Entered: 11/24/2020) |
| 11/24/2020 | 16 | DOCKETING STATEMENT by RYAN T. MCMULLEN re 14 Notice of Appeal (AAS) (Entered: 11/24/2020) |
| 11/24/2020 | 17 | PARTIES' SHORT RECORD re 14 Notice of Appeal - **Instructions for Attorneys/Parties attached.** (Copy mailed to Petitioner.) (LBT) (Entered: 11/24/2020) |

**Case #: 2:19-cv-00356-JRS-MJD**