UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

RYAN T. McMULLEN,

    Petitioner-Appellant,

v.

GARY DALTON and MELISSA STEPHENSON,

    Respondents-Appellees.

Case No. 20-3273

### Response in Opposition to Motion to Dismiss

Petitioner Ryan T. McMullen, through counsel, submits this response in opposition to Respondents Gary Dalton and Melissa Stephenson's motion to dismiss the appeal on mootness grounds. (*See* D.E. 28.) McMullen's release from prison and placement on probation do not moot this appeal challenging his fifty-year sentence because the state court's orders show that the sentence has been suspended, but not reduced. And the conditions of McMullen's probation make clear that his probation may be revoked "at any time." With the specter of his fifty-year sentence always looming—and prison awaiting if he makes one misstep—McMullen retains a concrete interest in the outcome of this appeal. Respondents have not met their burden to show that subsequent events have mooted this case.

I.    McMullen's original sentence is suspended, but persists.

McMullen's opening brief describes the recent developments in state court that led to his release from prison. (Br. of Pet'r at 25–26; *see also* D.E. 16-1.) A few of those facts are worth highlighting here. Indiana law authorizes a court to "reduce or suspend the sentence [of a convicted person] and impose a sentence that the court was authorized to impose at the time of sentencing." Ind. Code Ann. § 35-38-1-17(e). Note that this provision allows a court

to suspend a sentence without reducing it. *See id.* The state court's order granting McMullen's renewed motion to modify his sentence pursuant to this statute did just that. It "modified" his sentence thus: "The remainder of Defendant's executed sentence under 27C01-0904-FA-134 is suspended . . . ." (D.E. 16-3 at 3.) The court also noted that it "reserve[d] the right to modify probation to informal probation, or to shorten his suspended sentence, if Defendant has achieved all of the recommendations of his Probation Case Plan and has maintained an exemplary conduct record." (*Id.* at 3–4.) Thus, this order suspended McMullen's sentence, but did not reduce it.

The court's subsequent orders have defined and changed the conditions of McMullen's probation, but have not explicitly reduced his now-suspended sentence. First, the court's Order Imposing Conditions of Probation did not include the word "sentence." It only described McMullen's probation, stating that it would end on September 28, 2049. (D.E. 16-4 at 2.) Second, the court's May 2022 order modifying conditions of probation explicitly modified only the term of his probation, stating that "[t]he new term or [sic] probation shall begin on 2/26/2022 and end 7/18/2040." (*Id.*)

The distinction between sentence and probation term is critical here. The latter is much more malleable. The Order Imposing Conditions of Probation made clear that the court "may at any time revoke, modify or extend [McMullen's] probation." (D.E. 16-4 at 2.) So there is no guarantee that McMullen's probation will actually end in 2040. Additionally, the order stated:

> A Petition for Revocation of Probation may be filed within one (1) year of termination of my probation or forty-five (45) days after the state receives notice of the violation, whichever comes first. If I am arrested on a warrant for probation violation, I will waive extradition to the State of Indiana and this Court. If a Petition for Revocation is filed prior to my termination date, I am still responsible for all conditions of probation until the violation is resolved.

(D.E. 16-4 at 2 (emphasis added).) The May 2022 order modifying conditions of probation contained similar language regarding a petition to revoke probation. (D.E. 16-6 at 2.) Meanwhile, McMullen's fifty-year suspended sentence remains in place.

## II. McMullen's appeal is not moot.

Under Article III of the Constitution, federal courts may adjudicate only live cases or controversies, and "an actual controversy must be extant at all stages of review." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (citation omitted). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* (cleaned up). "A case becomes moot, however, only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) (cleaned up), *as revised* (Feb. 9, 2016). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted).

"The party asserting mootness . . . bears the burden of persuasion." *Dorel Juv. Grp., Inc. v. DiMartinis*, 495 F.3d 500, 503 (7th Cir. 2007). "That burden is heavy where, as here, the only conceivable basis for a finding of mootness in the case is the respondent's voluntary conduct." *West Virginia v. Envtl. Prot. Agency*, 142 S. Ct. 2587, 2607 (2022) (cleaned up); *see also Smith v. Bezy*, 141 F. App'x 479, 481 (7th Cir. 2005) ("A party asserting that a claim is moot bears a 'heavy burden.'" (quoting *Edwards v. Ill. Bd. of Admissions to the Bar*, 261 F.3d 723, 728 (7th Cir. 2001))). That is, subsequent events must "ma[k]e it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968). Respondent Dalton has taken

3

an active role in defining the conditions of McMullen's probation.[1] (*See* D.E. 16-4 at 2; D.E. 16-6 at 2.) And Respondents may petition the state court to revoke McMullen's probation at any time, even up to a year after his probation term ends. McMullen's freedom is thus dependent on their voluntary conduct, and the Supreme Court's "stringent standard for determining whether an issue has been rendered moot by [Respondents'] voluntary conduct" applies here. *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 999 (7th Cir. 2002).

In any event, Respondents have not shown under either burden that McMullen's appeal is moot. Multiple district courts, including one in Indiana, have pinpointed the moment at which a habeas petition becomes moot following the imposition of a suspended sentence: after the suspended sentence has expired. *See, e.g.*, *Jasper v. Braxton*, No. 7:11CV00210, 2012 WL 844442, at *3 (W.D. Va. Mar. 12, 2012) (dismissing petition as moot after the state court's authority "to revoke the suspended sentence for any violations committed during the suspension period . . . expired" and a result, the petitioner "no longer face[d] any potential sentence of detention pursuant to the . . . conviction"); *Wilms v. Hanks*, No. 2:05-CV-141-RLY-WGH, 2005 WL 2127441, at *1 (S.D. Ind. Aug. 31, 2005) ("Although the imposition of a suspended sentence is now understood to constitute 'custody' sufficient to support a claim for habeas relief, such a claim becomes moot if the period of suspension passes and has not been enforced or imposed, because the 'custody' has ended." (citations omitted)); *Scarborough v. Kellum*, 386 F. Supp. 1360, 1368–69 (N.D. Miss. 1975), *aff'd*, 525 F.2d 931 (5th Cir. 1976). This is consistent with the Supreme Court's approach in *Lane v. Williams*, 455 U.S.

---

[1] "Probation services in Indiana fall within the jurisdiction of the judiciary; the probationer remains under court jurisdiction until the term of probation is complete. Probation officers are local court employees and are subject to the appointment and supervisory power of the courts they serve." *2020 Indiana Probation Report: Summary and Statistics* at 1, Indiana Office of Court Services, https://www.in.gov/courts/iocs/files/rpts-ijs-2020-probation.pdf.

624 (1982), which Respondents cite in their brief. *See id.* at 631 ("Since respondents elected only to attack their sentences, and *since those sentences expired* during the course of these proceedings, this case is moot." (emphasis added)); (D.E. 28 at 2).

The suspended sentence has not expired in McMullen's case and will not for many years. (*See* D.E. 16-6 at 2.) Thus, it is not "already served," as Respondents suggest. *See Lane*, 455 U.S. at 631 (citation omitted); (D.E. 28 at 2). A live controversy still exists here because McMullen "may be reincarcerated if he violates the terms and conditions of his suspended sentence." *See Jasper*, 2012 WL 844442, at *2. The threat of reincarceration under the very sentence challenged in his habeas petition sustains McMullen's "concrete interest . . . in the outcome of the litigation." *Chafin*, 568 U.S. at 172 (citation omitted). Accordingly, "[b]ecause he has suspended sentences, . . . his petition is not moot." *Smith v. Dir. of Dep't of Corr.*, No. 7:11CV00359, 2012 WL 2871421, at *1 n.1 (W.D. Va. July 12, 2012).

Resisting this clear line of demarcation between live controversy and mootness, Respondents cite this Court's recent decision in *Watkins v. United States District Court for the Central District of Illinois*, 37 F.4th 453 (7th Cir. 2022), but that case is readily distinguishable. (*See* D.E. 28 at 3.) There, the petitioner was serving a federal sentence of life imprisonment and moved for resentencing under the First Step Act. *Id.* at 457. The district court "resentenced him to time served and imposed a reduced eight-year term of supervised release." *Id.* As a result, the life sentence the petitioner challenged in his § 2241 petition was extinguished by the resentencing, and there was no risk that he would have to return to prison to serve out the remainder of that sentence. Instead, he argued that the challenge to his sentence was not moot because "a favorable decision on the merits here could lead to a further reduction in his supervised release term." *Id.* at 455. The Court found this argument "too

5

speculative to keep the case alive," *id.*, and walked through the many steps in the "attenuated chain of events built on escalating levels of speculation" that it would take to "picture any effective relief":

> First, as a preliminary matter, if we vacated Watkins' sentence, the district court would then have to resentence Watkins to twenty years' imprisonment—since that is the mandatory minimum he would have been subject to based on his predicate federal conviction alone. See 21 U.S.C. § 841(b)(1)(A) (2004). (The reduced mandatory minimum sentences under section 401 of the First Step Act did not automatically apply to already-sentenced defendants.) Watkins would then need to re-apply for relief under the First Step Act. The district court would then have to hold another First Step Act hearing, weigh the relevant factors, and conclude that Watkins was entitled to a reduced sentence even lower than the fifteen years he already served. Finally, one of two things would need to happen. Either the district court would have to exercise its considerable discretion under 18 U.S.C. § 3583(e) to reduce Watkins' term of supervised release to less than eight years or Watkins would have to violate his supervised release conditions and use the excess prison time he served as banked time against any new term of imprisonment.
>
> At each step, Watkins can only speculate that he might benefit from a decision on the merits.

*Id.* at 458–59.

Here, the chain is much more direct. McMullen's original fifty-year sentence is still intact, just suspended. That suspended sentence will continue to hang over him for the next eighteen years—longer if the court extends his probation, which it can do at a whim. Respondents may petition the state court to revoke McMullen's probation and send him back to prison at any time, or the court may do so *sua sponte*. This is not a speculative, remote possibility. Since 2011, revocations have accounted for between 24% and 34% of all felony probation dispositions in Indiana.[2] Nationally, "45 percent of all US state prison admissions

---

[2] *2020 Indiana Probation Report* at 10.

stemmed from probation and parole violations."[3] Moreover, the conditions of McMullen's probation are detailed and onerous. McMullen is prohibited from consuming alcohol, visiting any bar or liquor store, visiting any jail or prison, and leaving the state without court permission. He must periodically report to his probation officer, Respondent Dalton, consent to searches, seizures, and visits from Dalton at any time, and submit to drug testing. (D.E. 16-4 at 2–3.) Even though McMullen's conduct on probation has been exemplary, there are many pitfalls here, and they will remain in his path for a very long time.

Additionally, McMullen still has not received the relief he requests in his habeas petition: a new, full sentencing hearing at which he can submit the voluminous evidence of his social background and mental health that his attorney failed to discover or present at his original sentencing hearing. Unless and until this Court acts, McMullen will continue to be deprived of that opportunity. And he will remain on probation, which can be extended whenever the state court wants, while the court can revoke his probation (or Respondents can petition for revocation) and send him back to prison "at any time." (D.E. 16-4 at 2.) If that happens, McMullen will once again be serving the fifty-year sentence that was imposed on him in violation of his Sixth Amendment right to counsel. Thus, McMullen "continues to suffer collateral consequences that may be redressed in a petition for habeas corpus." *Bezy*, 141 F. App'x at 481; *see Cochran v. Buss*, 381 F.3d 637, 640 (7th Cir. 2004).

Respondents' citation to *United States v. Shorter*, 27 F.4th 572 (7th Cir. 2022), does not move the needle, either. (*See* D.E. 28 at 3.) There, the petitioner appealed the denial of his

---

[3] Allison Frankel, *Revoked: How Probation and Parole Feed Mass Incarceration in the United States* (July 31, 2020) Human Rights Watch,
 https://www.hrw.org/report/2020/07/31/revoked/how-probation-and-parole-feed-mass-incarceration-united-states.

motion for compassionate release, but then "the Bureau of Prisons transferred Mr. Shorter out of prison to serve the remainder of his term of imprisonment in home confinement." *Shorter*, 27 F.4th at 575. Both parties opined "that the case is moot because Mr. Shorter is not in any Bureau of Prisons facility, including a residential reentry center." *Id.* The Court agreed, holding that "Mr. Shorter requested a modified sentence so he would no longer be in prison. He is no longer in prison, so there is no further relief that a court can grant him." *Id.* at 576. As discussed above, the fifty-year sentence challenged in McMullen's habeas petition is still in place and there is a real possibility that he could be returned to prison to complete it. The intact nature of the original sentence and the ease with which McMullen's probation can be revoked distinguish this case from *Shorter* and *Spencer v. Kemna*, 523 U.S. 1 (1998), cited therein. *Compare* (D.E. 16-4 at 2 (stating that the court may revoke McMullen's probation "at any time")), *with Spencer*, 523 U.S. at 15 (rejecting as too speculative the released petitioner's contention that the challenged parole violation and revocation might be used in a separate proceeding to increase a sentence stemming from a hypothetical future criminal conviction).

III. Conclusion

For the reasons discussed above, the Court should deny Respondents' motion to dismiss and proceed to the merits of McMullen's appeal. At a minimum, McMullen respectfully requests that the Court reserve ruling on the motion to allow the parties to address this issue at oral argument. (*See* Br. of Pet'r at xii.)

Filed: October 4, 2022

>Respectfully submitted,
>
>s/ *Benjamin S. Morrell*
>Benjamin S. Morrell

Michael A. Mayerck
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Dr., Ste. 2800
Chicago, IL 60601
(312) 527-4000
bmorrell@taftlaw.com
mmayerck@taftlaw.com

*Pro Bono Counsel for Petitioner-Appellant*

## Certificate of Compliance

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that the foregoing document complies with the type-volume limitation of Rule 27(d)(2)(A). This document contains 2,500 words.

I further certify that the foregoing document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6), as this document has been prepared using Microsoft Word 2016 in the proportionally spaced typefaces of Gill Sans MT (headings and captions) and Calisto MT (body), both in 12-point font size. *See* 7th Cir. R. 32(b).

Date: October 4, 2022

s/ _Benjamin S. Morrell_
Benjamin S. Morrell
*Pro Bono Counsel for Petitioner-Appellant*

## Certificate of Service

I hereby certify that on the date listed below, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Date: October 4, 2022

s/ <u>Benjamin S. Morrell</u>
Benjamin S. Morrell
*Pro Bono Counsel for Petitioner-Appellant*
