UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

No. 20-3273

RYAN T. MCMULLEN,
*Petitioner-Appellant,*

v.

GARY DALTON AND MELISSA STEPHENSON,
*Respondents-Appellees.*

---

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 2:19-cv-356-JRS-MJD
The Honorable James R. Sweeney II, Judge.

---

## BRIEF OF RESPONDENTS-APPELLEES GARY DALTON AND MELISSA STEPHENSON

JESSE R. DRUM
Assistant Section Chief, Criminal Appeals

OFFICE OF THE ATTORNEY GENERAL
Indiana Government Center South
302 West Washington Street, Fifth Floor
Indianapolis, Indiana 46204-2770
317-234-7018 (telephone)
Jesse.Drum@atg.in.gov

*Attorney for Respondents-Appellees*

# TABLE OF CONTENTS

Table of Authorities...................................................................................... ii

Jurisdictional Statement................................................................................1

Statement of the Issues.................................................................................1

Statement of the Case ..................................................................................1

   A. McMullen's Criminal History, Crimes, and Sentence .....................................1

   B. Direct Appeal...........................................................................6

   C. State Post-Conviction Proceedings...........................................7

   D. Federal Habeas Corpus Proceedings.........................................9

   E. Resentencing .........................................................................10

Summary of the Argument ........................................................................10

Argument:

   The Court should dismiss this appeal or affirm the district court......................11

   I.   This sentencing appeal is moot because McMullen has been
       resentenced ................................................................................11

   II.   The state court reasonably determined that McMullen's trial
       counsel was not ineffective.......................................................14

       A. The state court reasonably determined that McMullen's
          counsel did not prejudice him at sentencing..................................17

       B. The state court reasonably determined that McMullen's trial
          counsel did not perform deficiently .................................................24

Conclusion....................................................................................................27

Certificate of Service ..................................................................................28

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Hous. Auth. of South Bend*, 683 F.3d 844 (7th Cir. 2012) ............................. 11

*Archer v. State*, 689 N.E.2d 678 (Ind. 1997) ................................................. 22

*Berman v. United States*, 302 U.S. 211 (1937) ........................................... 12

*Burt v. Titlow*, 571 U.S. 12 (2013) ...................................................... 22, 23

*Burton v. Stewart*, 549 U.S. 147 (2007) (per curiam) ................................. 12

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986) .......................................... 19

*Dorel Juv. Grp., Inc. v. DiMartinis*, 495 F.3d 500 (7th Cir. 2007) ........................... 11

*Harper v. Brown*, 865 F.3d 857 (7th Cir. 2017) ................................... 18, 19

*Harrington v. Richter*, 562 U.S. 86 (2011) ...........................................*passim*

*Hawkins v. State*, 951 N.E.2d 597 (Ind. Ct. App. 2011)
   (Robb, C.J., dissenting) ................................................................. 13

*Ivy v. State*, 947 N.E.2d 496 (Ind. Ct. App. 2011) ................................... 12

*Kimbrough v. Neal*, 941 F.3d 879 (7th Cir. 2019) ................................. 18, 19

*Knowles v. Mirzayance*, 556 U.S. 111 (2009) ........................................ 16

*Lane v. Williams*, 455 U.S. 624 (1982) ................................................ 11, 15

*Lewis v. Zatecky*, 993 F.3d 994 (7th Cir. 2021) ...................................... 12

*Lockyer v. Andrade*, 538 U.S. 63 (2003) ............................................... 15

*Magwood v. Patterson*, 561 U.S. 320 (2010) ......................................... 12

*Miller v. Zatecky*, 820 F.3d 275 (7th Cir. 2016) ............................. 17, 18, 19

*Rice v. Collins*, 546 U.S. 333 (2006) ................................................... 23

*Richardson v. Briley*, 401 F.3d 794 (7th Cir. 2005) ................................. 11

*Spencer v. Kemna*, 523 U.S. 1 (1998) ................................................. 11

*State v. Stafford*, 128 N.E.3d 1291 (Ind. 2019) ...................................... 13

*Strickland v. Washington,* 466 U.S. 668 (1984) .............................. 15, 16, 24

*United States v. Shorter*, 27 F.4th 572 (7th Cir. 2022).............................. 13

*Watkins v. U.S. Dist. Ct. for the Cent. Dist. of Ill.,* 37 F.4th 453
   (7th Cir. 2022)............................................................................... 13

*Weeks v. State*, 697 N.E.2d 28 (Ind. 1998) ....................................... 22

*Williams v. Taylor*, 529 U.S. 362 (2000) ................................... 14, 15

*Wilson v. Sellers*, 138 S. Ct. 1188 (2018)........................................ 24

*Wong v. Belmontes*, 558 U.S. 15 (2009) (per curiam) .................... 19

*Wood v. Allen*, 558 U.S. 290 (2010) ................................................. 23

*Woodford v. State*, 58 N.E.3d 282 (Ind. Ct. App. 2016)................. 13

*Woods v. McBride*, 430 F.3d 813 (7th Cir. 2005) ........................... 11

## Statutes

28 U.S.C. §1291............................................................................ 1

28 U.S.C. §2253............................................................................ 1

28 U.S.C. §2254..................................................................... 1, 11

28 U.S.C. §2254(a) ..................................................................... 11

28 U.S.C. §2254(d) ............................................................... 14, 16

Ind. Code §35-38-1-7.1 (2008)................................................... 22

Ind. Code §35-38-1-17 ............................................................... 10

Ind. Code §35-38-1-17(e) (2018) ......................................... 10, 12

Ind. Code §35-38-1-17(f) ........................................................... 12

Ind. Code §35-50-1-1 (1977)...................................................... 18

Ind. Code §35-50-2-4 ................................................................. 26

Ind. Code §35-50-2-8(a) (2005) ................................................. 26

**Other Authorities**

Ind. Appellate Rule 2(H) ........................................................................ 12

Ind. Appellate Rule 5(A) ........................................................................ 12

Ind. Appellate Rule 7(B) ................................................................. 6, 13, 18

# JURISDICTIONAL STATEMENT

Petitioner-Appellant Ryan T. McMullen's amended jurisdictional statement is not complete and correct. He filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Southern District of Indiana. The district court issued an order denying a writ of habeas corpus but granting a certificate of appealability on October 23, 2020 (R. 12), and the clerk entered final judgment on the same day (R. 13). McMullen filed a notice of appeal on November 24, 2020 (R. 14). This Court has jurisdiction to review the district court's final decision under 28 U.S.C. §§ 1291 and 2253.

# STATEMENT OF THE ISSUES

I.      Whether this sentencing appeal is moot because McMullen has been resentenced.

II.     Whether the state court reasonably determined that McMullen's trial counsel was not ineffective at sentencing.

# STATEMENT OF THE CASE

McMullen appeals from the district court's denial of his petition for a writ of habeas corpus.

## A.  McMullen's Criminal History, Crimes, and Sentence

At 24 years old, McMullen already had a lengthy juvenile and criminal history. As a juvenile, he was referred to the juvenile probation department for 11 misdemeanors, four felonies, four status offenses, and three probation violations (DA App. 167–68, 171). The felony referrals were for auto theft, receiving stolen

property, robbery, and armed robbery (DA App. 167–68). As an adult, he was convicted of nine misdemeanors and two felonies and had two probation violations (DA App. 168–71). His convictions included pointing a firearm, carrying a handgun without a license, criminal recklessness with a deadly weapon, and possession of marijuana (DA App. 168–70).

McMullen was convicted of possession of marijuana on November 12, 2008 (DA App. 170). He was supposed to report to jail on December 12, 2008, but he "decided to wait until after Christmas and then a couple of days passed and then a couple more days passed, the same time [he] was involved with dealing drugs" (DA App. 172; *see also* DA App. 170, 177). He was staying with the mother of some of his children in a public housing complex (App. 2–3).

During a scheduled pesticide treatment on January 8, 2009, a complex employee found a loaded assault weapon in the kitchen and contacted a detective (App. 2). The police surveilled the apartment and witnessed evidence of drug dealing (App. 3). They approached the door and saw McMullen sitting on a couch inside (App. 3). An infant was on the couch and the apartment smelled like marijuana when the police entered (App. 4). The police obtained a search warrant for the apartment and found "nearly eighteen grams of cocaine, one kilogram of marijuana, and a nine millimeter handgun" (App. 4).

The State charged McMullen with possessing and dealing cocaine, neglecting a dependent, possessing marijuana, and with being a habitual offender (App. 4). While he was released on bond, he continued to deal drugs (PCR Tr. 21). He sold

drugs three times to a confidential informant, leading to new charges (PCR Tr. 21).

He also picked up charges for attempted murder, criminal recklessness with a

deadly weapon, and battery by means of a deadly weapon (DA App. 170, 177; PCR

Tr. 20–21).[1] In this case, a jury found him guilty of two counts of possessing cocaine

and possessing marijuana (App. 6).

Before sentencing, the probation department prepared a presentence

investigation report (DA App. Vol. II). In addition to McMullen's lengthy juvenile

and criminal history, the PSR included reports that McMullen had threatened and

battered jail officers and choked another inmate (DA App. 184, 186, 192). The PSR

also contained details about McMullen's family and personal background (DA App.

172–75).

According to the PSR, both of McMullen's parents have criminal records (DA

App. 173). He described his childhood as "not great" (DA App. 173). His mother's

boyfriend "abused [his] mother, dealt drugs and abused [him] and [his] sister" (DA

App. 177). He twice moved from his mother's care to his grandmother's (DA App.

173). Although his father lived with his grandmother, "his father was not a father

figure in his life" (DA App. 173). McMullen dropped out of school in 12th grade and

obtained his GED (DA App. 174). While he was in school, he was suspended for

fighting and truancy (DA App. 174).

---

[1] After he was sentenced in this case, he pled guilty to criminal recklessness with a
deadly weapon, and the other charges were dismissed (PCR Tr. 20–21). *See* Docket,
*State v. McMullen*, No. 27D01-0910-FA-232, available at mycase.IN.gov. The
original cause number listed in the PSR was amended.

McMullen described his mental health as "okay"[2] (DA App. 175). He reported that he had not been diagnosed with a mental health disorder (DA App. 175). He did participate in counseling as a child, in part "when he was removed from his mother's case due to abuse" (DA App. 175). He started drinking alcohol as a teenager and was sometimes embarrassed by his drinking "because [his] father was like that" (DA App. 175). He also smoked marijuana, binged on cocaine for a week, and abused Loritab (DA App. 175).

To prepare for sentencing, McMullen's counsel examined the PSR and "discussed Ryan with his grandmother on more than one occasion" (PCR Tr. 15). Counsel "was well aware of [McMullen's] difficult upbringing" (PCR Tr. 15). Counsel was "on the public defender board" and "capital trained," so he knew "the advantage of mitigation testimony" (PCR Tr. 15–16). He also knew "that it requires effort really from the first day you take the case to develop in any kind of persuasive way" (PCR Tr. 16). He has "used it in other cases and tried to use it in other cases" (PCR Tr. 16). He did not request additional funds to conduct that type of mitigation investigation in this case (PCR Tr. 16). Because McMullen "still had a pending attempted murder charge and three other drug charges," counsel "didn't think that mitigation would stack up" (PCR Tr. 16).

Based on his research, McMullen's counsel knew that the habitual offender allegation "was no good" (PCR Tr. 8). He raised that issue with the State after the

---

[2] The PSR says "oaky," but that was likely a typographical error.

jury's verdict (PCR Tr. 8). The State agreed to dismiss the allegation (Tr. 491–92; PCR Tr. 8).

At the sentencing hearing, McMullen's counsel convinced the trial court, Judge Mark Spitzer, to vacate one of the cocaine counts (Tr. 493–94, 499). Counsel corrected a mistake in McMullen's criminal history in the PSR (Tr. 490–91). And he pointed out that the PSR was internally inconsistent because it said that McMullen blamed others for his crimes and that he did not blame others for his crimes (Tr. 495). After the State argued that McMullen's criminal history justified a 50-year sentence (Tr. 492–93), McMullen's counsel relied on the PSR to argue that most of McMullen's adjudications and convictions were "for minor violations" (Tr. 494). Counsel also stressed the number of dismissals in McMullen's criminal history, which he argued "shows a serious pattern of charging my client when it's not justified" (Tr. 494). Although McMullen accepted responsibility for his crimes, counsel highlighted "the history which explains the behavior" (Tr. 496). That history included his mother's "boyfriend who abused him, abused his mother, abused his sister" (Tr. 495–96). Finally, counsel emphasized McMullen's statements about his positive plans for prison (Tr. 497). Counsel recommended a 35-year sentence with five years suspended to probation (Tr. 496).

The trial court found as an aggravating circumstance McMullen's "lengthy juvenile and criminal history" (Tr. 497–98). The court observed that "frankly the county has spent an awful lot of money attempting to rehabilitate," but McMullen has not been rehabilitated (Tr. 498). In fact, the court continued, he was "on

probation out of this court, at the time this offense was committed" (Tr. 498–99). The court also determined that hardship to McMullen's dependents was a mitigating circumstance because he was ordered to pay child support for four of his six children (Tr. 499; *see* DA App. 177). The court sentenced McMullen to 50 years (Tr. 499).

## B. Direct Appeal

On direct appeal, McMullen challenged the admission of evidence at trial and his sentence. He attacked his sentence under Indiana Appellate Rule 7(B), which allows an appellate court to "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." On the sentencing issue, the Indiana Court of Appeals first determined that "[t]he nature of McMullen's offenses justifies a maximum sentence" (App. 11). The court reasoned that McMullen was dealing drugs "not just *near* a family housing complex, but *in* a family housing complex" (App. 11). "In addition to the vast amounts of illegal drugs found in the apartment (several thousand dollars' worth each of crack cocaine and marijuana)," the court observed, "police also found a digital scale and a loaded nine millimeter handgun, other trappings of the drug dealer" (App. 11). The court also determined that "McMullen's maximum sentence is justified by his appalling juvenile and adult criminal record" (App. 12). His "numerous firearms-related convictions" were "particularly disturbing" to the court (App. 13). Despite "McMullen's multitudinous juvenile adjudications, criminal convictions, and other

contacts with the criminal justice system," he has not "reform[ed] himself" (App. 13). The court unanimously affirmed his convictions and sentence (App. 13).

## C. State Post-Conviction Proceedings

McMullen filed petitions for sentence modification and post-conviction relief and litigated them together (*see* PCR Tr. 4). In his post-conviction petition, he argued in part that his trial counsel was ineffective at sentencing (PCR App. Vol. II 41–42; *see* PCR Tr. 4). Specifically, he argued that his counsel inadequately prepared for the sentencing hearing by not having him "evaluated by a mental health professional," asking him "about his personal history and background," talking "to him about potential sentencing witnesses," or attempting "to contact any of McMullen's friends or family members" (PCR App. Vol. II 41). According to McMullen, this investigation would have revealed "an extremely troubled childhood and his positive character traits" (PCR App. Vol. II 42). In support of his claim, he presented his and his trial counsel's testimony; his own affidavit; affidavits from family members, friends, three mothers of his children, and his old counselor; a report from a psychologist who evaluated him; and his records from the Youth Opportunity Center (PCR Tr. 5, 36; PCR Exs. 9–13, 16–19, 21, 24–28, 32, 34, 36, 37).[3] The hearing was before the same judge who had presided over McMullen's trial and sentenced him, Judge Spitzer (PCR Tr. 4).

---

[3] He presented separate evidence to support his petition to modify his sentence (*see, e.g.*, PCR Tr. 31).

Judge Spitzer rejected McMullen's claim that his trial counsel performed deficiently and prejudiced him at sentencing (App. 105). The court found that counsel "in fact, did assert that McMullen's troubled childhood was a mitigating factor at sentencing" (App. 102). Generally, the court noted, "testimony of friends and family members at sentencing indicating that they like the criminal defendant and offering their opinion of where and why such person went off the tracks of lawful behavior seldom offers any utility to the sentencing process" (App. 102). Specifically in this case, the court concluded that "such testimony, to the extent that it had any value at all, would have been cumulative of facts already established by the Presentence Investigation Report and arguments already offered by [counsel]" (App. 102–03). The court observed that, "even with the assistance of hindsight, McMullen fails to establish how that troubled childhood excuses his decision to engage in the illegal business of drug dealing" (App. 103). The court explained that it had sentenced McMullen to 50 years because of "McMullen's increasingly troubling behavior and history which occurred in the thirteen years prior to the day of sentencing" (App. 105; *see also* App. 103–05 (summarizing McMullen's juvenile and criminal history and failed attempts at rehabilitation)).

McMullen tried again on appeal (R. 6-10 at 48–59). The Indiana Court of Appeals agreed with the post-conviction court that McMullen's counsel did not perform deficiently or prejudice him at sentencing (App. 40–42[4]). The court first

---

[4] The page numbers in this part of McMullen's appendix are difficult to read; the state court's analysis spans PDF pages 44 to 46.

noted that McMullen's counsel "did argue several mitigating circumstances at McMullen's sentencing hearing," and, "because of the presentence investigation report, the sentencing court was already well aware of McMullen's background and any mental health concerns" (App. 40). The court also concluded that McMullen was not prejudiced because his sentence was based on his juvenile and criminal history and failed attempts at rehabilitation (App. 41–42). So "there is no reasonable probability that McMullen would have received a different sentence if [his counsel] would have argued more or different mitigating circumstances at sentencing" (App. 42).

## D. Federal Habeas Corpus Proceedings

After the Indiana Supreme Court denied McMullen's petition to transfer, he filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Indiana, raising the same claim that his trial counsel was ineffective at sentencing, among others (R. 1 at 7). The district court did not believe that the Indiana Court of Appeals explicitly found that McMullen's trial counsel performed reasonably, so it reviewed counsel's performance de novo (RSA 16). The court determined that counsel performed deficiently (RSA 18). But the court held that the state court reasonably determined that counsel's performance did not prejudice McMullen (RSA 19–21). The court concluded that "jurists of reason could disagree with the Court's resolution of Mr. McMullen's ineffective assistance of counsel at sentencing claim" and granted a certificate of appealability (App. 24).

### E. Resentencing

While McMullen's appeal was pending, he filed a petition for sentence modification in the trial court under Indiana Code § 35-38-1-17 (Doc. 16-2). That statute allows a trial court to "reduce or suspend the sentence and impose a sentence that the court was authorized to impose at the time of sentencing." Ind. Code § 35-38-1-17(e) (2018). The trial court held a hearing on McMullen's petition on March 5, 2021, and granted it on March 30, 2021 (Doc. 16-3). The trial court suspended the remainder of McMullen's sentence to probation (Doc. 16-3).

### SUMMARY OF THE ARGUMENT

I.     The Court should dismiss this sentencing appeal because it is moot. Between the district court's decision and this appeal, the trial court granted McMullen's petition for sentence modification. This means that McMullen is no longer serving the sentence that he challenges, so the Court cannot grant him relief.

II.     The state court reasonably determined that McMullen's counsel was not ineffective at sentencing. The easiest way to dispose of this claim is to hold that the state court reasonably determined that McMullen was not prejudiced by his counsel's performance. The same judge who sentenced McMullen examined his mitigation evidence and concluded that he would have given him the same sentence even if his counsel had presented that evidence. So there was zero probability of a different result, which is lower than a reasonable probability of a different result. Even though the Court does not need to analyze the performance of McMullen's counsel, he did not perform deficiently, which the state court reasonably determined.

## ARGUMENT

### The Court should dismiss this appeal or affirm the district court.

The Court should dismiss this appeal because it is moot. If the Court does not do that, then it should affirm the district court, whose factual findings it reviews for clear error and whose legal conclusions it reviews de novo. *Woods v. McBride*, 430 F.3d 813, 817 (7th Cir. 2005) (citing *Richardson v. Briley*, 401 F.3d 794, 799 (7th Cir. 2005)). McMullen is not entitled to a writ of habeas corpus because he is not "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

### I.

### This sentencing appeal is moot because McMullen has been resentenced.

The Court should dismiss this appeal because it is moot. Mootness is different than the "in custody" requirement of 28 U.S.C. § 2254, which only requires a habeas petitioner to be incarcerated for the judgment that he challenges when he files his petition. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Unlike the statute's set date, Article III, Section 2 of the Constitution requires a live case or controversy to exist throughout the appeal, making it possible for the Court to redress the appellant's alleged injury. *Id.* A case is moot when the Court "cannot grant 'any effectual relief whatever.'" *A.B. v. Hous. Auth. of South Bend*, 683 F.3d 844, 845 (7th Cir. 2012) (quoting *Dorel Juv. Grp., Inc. v. DiMartinis*, 495 F.3d 500, 503 (7th Cir. 2007)). The Court cannot help a habeas petitioner who only challenges his sentence when his sentence expires during his appeal. *Lane v. Williams*, 455 U.S. 624, 631 (1982). One way for a sentence to expire is to be replaced by a new one. *See*

*Magwood v. Patterson*, 561 U.S. 320, 338–39 (2010) (holding that a challenge to "an intervening judgment"—a new sentence—was not successive); *Burton v. Stewart*, 549 U.S. 147, 156 (2007) (per curiam) ("Final judgment in a criminal case means sentence. The sentence is the judgment.") (quoting *Berman v. United States*, 302 U.S. 211, 212 (1937)).

This appeal is moot because McMullen challenges an expired sentence. He argues that his trial counsel was ineffective at his first sentencing hearing. The only relief that he could receive—and the only relief that he requests—is a new sentencing hearing (Doc. 23 at 59–60). *See, e.g.*, *Lewis v. Zatecky*, 993 F.3d 994, 1006 (7th Cir. 2021) (remanding for a new sentencing hearing because counsel was ineffective at sentencing). But he already had one. At the modification hearing, the trial court was not limited by McMullen's original sentence. The court could have imposed any sentence that it "was authorized to impose at the time of sentencing." Ind. Code § 35-38-1-17(e) (2018). McMullen could have presented the same evidence that he argues his counsel should have presented at his original sentencing hearing. *See* I.C. § 35-38-1-17(f) (allowing the trial court to hold a hearing). And he might have presented that evidence (*see* Doc. 16-3 at 1 ("Evidence and arguments were heard and the Court took the matter under advisement.")).

McMullen's sentence modification was an intervening judgment. Under Indiana law, a modification order is an appealable final judgment. *See* Ind. App. R. 2(H) (defining final judgment), 5(A) (giving the Indiana Court of Appeals "jurisdiction in all appeals from Final Judgments"); *see, e.g.*, *Ivy v. State*, 947 N.E.2d

496, 498–99 (Ind. Ct. App. 2011) (holding that a master commissioner "had the power to enter a final judgment on Ivy's motion to modify his sentence"). If McMullen had been dissatisfied with his new sentence, then he could have appealed. *See, e.g.*, *Woodford v. State*, 58 N.E.3d 282, 287–88 (Ind. Ct. App. 2016) (remanding for the trial court that modified the appellant's sentence to consider his petition under the new version of the modification statute). Same for the State. *See, e.g.*, *State v. Stafford*, 128 N.E.3d 1291, 1292 (Ind. 2019) (reversing a trial court's modification order). Once a sentence has been modified, any challenge to the original sentence becomes moot. Former Chief Judge Robb demonstrated this in a hypothetical: "A defendant stays his appeal, the trial court grants his requested sentence modification, and the defendant then proceeds asking this court to further reduce his sentence pursuant to Rule 7(B). Which sentence are we to review? The original sentence has been modified, so it is moot." *Hawkins v. State*, 951 N.E.2d 597, 602 (Ind. Ct. App. 2011) (Robb, C.J., dissenting).

This Court recently applied the same reasoning to conclude that a challenge to a federal sentence was moot. In *Watkins v. U.S. Dist. Ct. for the Cent. Dist. of Ill.*, Watkins challenged his sentence in a habeas petition. 37 F.4th 453, 456 (7th Cir. 2022). While his appeal was pending, he successfully moved for a reduced sentence under a new law. *Id.* at 457. This made his sentencing challenge moot. *Id.* at 459. As the Court succinctly put it, "The problem for this appeal stems from good news for Watkins." *Id.* at 455; *see also United States v. Shorter*, 27 F.4th 572, 575 (7th Cir. 2022) (holding that "Shorter's release from prison renders moot his pursuit of

compassionate relief. All that he requested—and all the district court could have done for him … has been accomplished by his release from prison …."). The same is true for McMullen. He received the relief that he wants in state court, so he is no longer sentenced under the judgment that he challenges, and his appeal is moot. The Court should dismiss it.

## II.
### The state court reasonably determined that McMullen's trial counsel was not ineffective.

If the Court does not dismiss McMullen's appeal, then it should affirm the district court. The state court adjudicated McMullen's ineffectiveness claim on the merits, so he must prove that the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The state court's decision was not contrary to clearly established federal law. A decision is contrary to federal law if "the state court arrives at a conclusion opposite that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and" reaches an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A decision is also contrary to "clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Id.* at 405. But "a run-of-the-mill state-court decision applying the correct

legal rule from [Supreme Court] cases to the facts of a prisoner's case" is not. *Id.* at 406. For example, if "a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* as the controlling legal authority and, applying that framework, rejects the prisoner's claim[,] … the state-court decision would be in accord with … *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim." *Id.*

The state court correctly identified the controlling legal authority, applied that framework, and rejected McMullen's claim. The clearly established federal law that governs claims of ineffective assistance of counsel is *Strickland v. Washington*, which requires a petitioner to show that his "counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688–89, 694 (1984). The court correctly recognized and recited the *Strickland* test and applied it to McMullen's claim (App. 21–22, 40).

The court also reasonably applied *Strickland* to the facts. When a state court "correctly identifies the governing legal rule," the petitioner must prove that the court "applie[d] it unreasonably to the facts of [his] case." *Williams*, 529 U.S. at 407–09. It is not enough for him to show that the court applied federal law incorrectly because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101–02 (2011) (citing *Williams*, 529 U.S. at 410; *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). He must demonstrate that all "fairminded jurists" would agree "that the

state court's decision conflicts with [Supreme Court] precedents." *Id.* at 102. That means the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Id.* at 103. It is a difficult standard to meet "because it was meant to be." *Id.* at 102. Relief under § 2254(d) is reserved for "extreme malfunctions in the state criminal justice systems." *Id.* at 102 (citation omitted).

McMullen's burden is even more difficult because he alleges ineffective assistance of counsel. On its own, the *Strickland* standard is "highly deferential." 466 U.S. at 689. But the standard is "doubly deferential" under AEDPA because "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. The *Strickland* standard is general, "so the range of reasonable applications is substantial." *Id.* (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

The state court's decision fit well within the reasonable range. The court reasonably determined that McMullen's counsel did not perform deficiently or prejudice him at sentencing. The easiest way to resolve McMullen's claim is to hold that the state court reasonably determined that McMullen's counsel did not prejudice him. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

**A. The state court reasonably determined that McMullen's counsel did not prejudice him at sentencing.**

The state court reasonably determined that there was no reasonable probability that McMullen's counsel could have secured a shorter sentence by presenting more mitigating evidence. The record shows that the probability of a different outcome was zero. The same judge who sentenced McMullen presided over his post-conviction proceedings (Tr. 488; PCR Tr. 4). Judge Spitzer examined the mitigation evidence that McMullen argued his counsel should have presented and concluded that it would not have changed his sentence (App. 102–05). The court explained that it had sentenced McMullen to 50 years because of "McMullen's increasingly troubling behavior and history which occurred in the thirteen years prior to the day of sentencing" (App. 105). The court's explanation was consistent with the Indiana Court of Appeals' determination on direct appeal that "McMullen's maximum sentence is justified by his appalling juvenile and adult criminal record" (App. 12). Because the record shows exactly what would have happened if McMullen's counsel had presented the evidence the McMullen argued he should have presented, it was reasonable for the state court to determine that "there is no reasonable probability that McMullen would have received a different sentence" (App. 42). McMullen cannot show that all "fairminded jurists" would disagree with the state court's decision. *Richter*, 562 U.S. at 102–03.

This Court applied the same reasoning in a line of analogous cases beginning with *Miller v. Zatecky*, 820 F.3d 275 (7th Cir. 2016). In *Miller*, the petitioner argued that his appellate counsel was ineffective for not challenging his sentence under

Indiana Appellate Rule 7(B). *Id.* at 276. When the Indiana Court of Appeals reviewed Miller's ineffectiveness claim, it determined that Miller's sentence was not inappropriate. *Id.* So "if Miller's appellate lawyer had contested the sentence, the argument would have failed on the merits. Because, in the state court's view, the chance of success was zero, it necessarily followed that Miller had not shown a 'reasonable probability'" of a different outcome on appeal. *Id.* The state court's decision "rest[ed] on a conclusion that, as a matter of *state* law, it would have been futile to contest the sentence's length on appeal." *Id.* at 277. Because the Court could not second-guess the state court's determination of state law, it held that the state court had reasonably applied *Strickland*. *Id.* at 277, 279. *See also Harper v. Brown*, 865 F.3d 857, 861 (7th Cir. 2017) (applying the same reasoning to the same claim); *Kimbrough v. Neal*, 941 F.3d 879, 881–82 (7th Cir. 2019) (same).

A trial court's decision to sentence a defendant is as much a state law issue as an appellate court's decision to resentence a defendant. *See* Ind. Code § 35-50-1-1 (1977) ("The court shall fix the penalty of and sentence a person convicted of an offense."). And a trial court's decision that it would have imposed the same sentence is even more certain than an appellate court's statement that it would not have revised a sentence because three-judge appellate panels are randomly assigned. *See Miller*, 820 F.3d at 283 (Adelman, Dist. J., dissenting) ("That this panel of the Indiana court of appeals found the sentence appropriate on post-conviction review does not foreclose the possibility that the Indiana supreme court (or the different panel of the court of appeals that heard Miller's direct appeal) would have exercised

independent authority differently.") (footnotes omitted). To give McMullen relief, this Court would have to hold that it was unreasonable for the Indiana Court of Appeals to believe the trial court when it said it would have imposed the same sentence, even though the appellate court was in the same position as this Court in *Kimbrough*, *Harper*, and *Miller*. Not only that, but this Court would also have to hold that it was unreasonable for the trial court to say that it would have imposed the same sentence because this Court believes that it would have imposed a different one. This is not the role of a federal court on habeas review.

Even if the trial judge had been less than certain, it still would have been reasonable for the Indiana Court of Appeals to reject McMullen's claim for lack of prejudice. Although McMullen's new evidence gave the PSR information color, it was mostly cumulative of what the trial court already knew. *See Wong v. Belmontes*, 558 U.S. 15, 22 (2009) (per curiam) ("Some of the evidence was merely cumulative of the humanizing evidence Schick actually presented; adding it to what was already there would have made little difference."); *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (holding that a court may determine that an error was harmless beyond a reasonable doubt if "the testimony was cumulative").

The PSR proved that McMullen had a bad childhood. It showed that both of McMullen's parents have criminal records (DA App. 173). It showed that McMullen's mother's boyfriend dealt drugs and abused his mother, his sister, and him (DA App. 177). It showed that McMullen twice moved from his mother's care to his grandmother's, where even though his father lived there, he "was not a father

figure" for McMullen (DA App. 173). It showed that McMullen was suspended from school for fighting and truancy before he dropped out in 12th grade (DA App. 174). It showed that McMullen participated in counseling as a child, in part "when he was removed from his mother's care due to abuse" (DA App. 175). And it showed that McMullen started drinking alcohol as a teenager, like his father, and that he smoked marijuana, binged on cocaine for a week, and abused Loritab (DA App. 175).

McMullen's new evidence confirmed that he had a bad childhood, but his evidence was not as compelling as he believes. Some of it was contradictory. For example, his grandmother told a story about McMullen wanting "to buy a gun so he could use it to keep [his mother's boyfriend] from abusing [his mother]. Not long afterwards, he robbed a woman and used the money he took from the woman to buy a gun" (App. 115). McMullen's records from the Youth Opportunity Center told a different story: After McMullen "grabbed an envelope containing 200 dollars from a woman who was exiting the gas station," he "went to a friend's house and played video games" (App. 189). After playing games, "he went to DairyMart and bought a 50-dollar handgun from a man nicknamed 'Face,'" which McMullen used "later that evening to rob a man exiting a sports bar. He took the man's necklace and ten dollars" (App. 189). McMullen explained that "he committed the crimes because he 'had a bad day'" (App. 189). As another example of conflicting evidence, one of the mothers of McMullen's children swore in her affidavit that McMullen "witnessed [his sister] being sexually abused by his mother's boyfriend several times" (App.

216). But McMullen's sister swore in her affidavit that her mother's boyfriend "never did anything sexual" (App. 134).

McMullen's witnesses did agree that he succeeded when he tried and that his behavior improved when he was not living with his mother. His grandmother, mother, and uncles agreed that he received good grades in school when he "applied himself" (App. 116, 120, 123, 182). His grandmother, uncles, cousin, counselor, and great uncle agreed that he was a good basketball player (App. 116, 123, 128, 131–32, 174, 177–78, 182). And his uncle explained that he "was like night and day when he lived with his mom compared to how he was when he lived with us. He did really well when he was with us"; his other uncles agreed (App. 123, 177, 182).

This evidence shows that McMullen cannot blame his bad childhood for his crimes. He was not living with his mother when he dealt drugs in this case; he was living with the mother of some of his children in a public housing complex (App. 2–3). Just as he sometimes applied himself to school and basketball, he chose to apply himself to drug dealing. As he explained in the PSR, even though the jail was expecting him, he "decided to wait until after Christmas and then a couple of days passed and then a couple more days passed, the same time [he] was involved with dealing drugs" (DA App. 172; *see also* DA App. 170, 177). And even when he was released on bond in this case, he kept dealing drugs and shot someone (DA App. 170, 177; PCR Tr. 20–21; PCR Ex. 40 (affidavit of McMullen's first trial counsel explaining that he had to withdraw because McMullen shot his other client)[5]).

---

[5] McMullen excluded this exhibit from his appendix.

Similarly, the record does not show that McMullen's mental health was a significant mitigating factor. When Indiana courts assess mental illness, they consider "(1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime." *Weeks v. State*, 697 N.E.2d 28, 30 (Ind. 1998) (citing *Archer v. State*, 689 N.E.2d 678, 685 (Ind. 1997)). Although the post-conviction psychologist diagnosed McMullen with panic disorder, posttraumatic stress disorder,[6] other substance use disorder, antisocial personality disorder, and a history of childhood abuse and neglect (App. 166), McMullen reported in the PSR that his mental health was "okay" (DA App. 175). Even in his post-conviction affidavit, he did not try to link his mental health to his crimes (*see* App. 224). He "first learned about" his diagnoses "when [he] was evaluated by Dr. Kohli at the DOC in 2016" (App. 224). He admitted that he sold drugs to make money (App. 225–26). His decision was poor, but it was rational.

The state court's conclusion that there was no prejudice was not based on an unreasonable factual determination. Factual determinations are reasonable if they are supported by the record. *See Burt v. Titlow*, 571 U.S. 12, 20 (2013). McMullen must show that all reasonable minds would disagree with the state court's factual

---

[6] PTSD was not a statutory mitigating circumstance when McMullen was sentenced, which is the relevant time for a *Strickland* analysis. *See* Ind. Code § 35-38-1-7.1 (2008).

findings. *See Rice v. Collins*, 546 U.S. 333, 341–42 (2006). The facts must be beyond debate. *See id.* at 342; *Burt*, 571 U.S. at 22; *Wood v. Allen*, 558 U.S. 290, 303 (2010).

To prove that the state court unreasonably determined the facts, McMullen relies on one sentence in its 36-page opinion: "Moreover, because of the presentence investigation report, the sentencing court was already well aware of McMullen's background and any mental health concerns" (App. 40). Whether the court was even referring to prejudice here is debatable. The sentence is in a paragraph that begins with an analysis of counsel's performance (App. 40). The court could have meant that there were no red flags about McMullen's mental health to signal to counsel to conduct more investigation.

Even if the court's statement was about prejudice, it is objectively true. The sentencing court did know if there were any mental health concerns in the PSR. There were not. McMullen described his mental health as "okay" and "stated that he has never been diagnosed with a mental health disorder but has had some concerns about depression" (DA App. 175). That was entirely consistent with his admission that he did not know about his mental health diagnoses until the post-conviction proceedings (App. 224). His argument in state court was that he should have because his counsel should have used his limited resources to investigate McMullen's mental health. Contrary to McMullen's suggestion, the state court did not hold that he was not prejudiced because the sentencing court already knew about his mitigating evidence; it held that he was not prejudiced because his mitigating evidence paled in comparison to his criminal history (App. 41–42).

Because the state court reasonably determined that McMullen was not prejudiced

by his counsel's performance, he is not entitled to habeas relief.

## B. The state court reasonably determined that McMullen's trial counsel did not perform deficiently.

Based on the prejudice analysis, the Court does not need to address the

performance of McMullen's counsel. Even if it does, there is no reason to review

counsel's performance de novo. To arrive at de novo review, McMullen takes the

wrong route. Like the district court, he thinks that *Strickland* performance and

*Strickland* prejudice are separate claims (Doc. 23 at 30–32). But *Strickland* is one

claim with two components. *See Richter*, 562 U.S. at 98. There is no question that

the state court adjudicated McMullen's *Strickland* claim on the merits (*see* App. 40–

42). The relevant question is whether the state court provided any reasons why

counsel did not perform deficiently because "a federal habeas court simply reviews

the specific reasons given by the state court and defers to those reasons if they are

reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).[7]

Although the state court focused on prejudice, it was not silent on

performance. It "note[d] that [counsel] did argue several mitigating circumstances

at McMullen's sentencing hearing including that: (1) despite McMullen's lengthy

criminal history, most of his offenses were for minor violations; (2) McMullen does

not blame anyone else for his conduct; and (4) McMullen was abused and neglected

---

[7] So if the state court says nothing about deficient performance, then the Court would only review that prong de novo if the prejudice determination was unreasonable.

as a child" (App. 40). Unlike McMullen, who concentrates on what his counsel did not do for him, the state court correctly asked whether "counsel's overall performance indicates active and capable advocacy." *Richter*, 562 U.S. at 111.

The state court reasonably determined that McMullen's counsel's overall sentencing performance was competent. To prepare for sentencing, McMullen's counsel examined the PSR and "discussed Ryan with his grandmother on more than one occasion" (PCR Tr. 15).[8] McMullen's grandmother provided the most detailed description of his childhood (App. 114–17), so the record corroborates counsel's testimony that he "was well aware of [McMullen's] difficult upbringing" (PCR Tr. 15). Counsel's decision not to present that evidence was reasonable and strategic. He was "on the public defender board" and "capital trained," so he knew "the advantage of mitigation testimony" (PCR Tr. 15–16). He also knew "that it requires effort really from the first day you take the case to develop in any kind of persuasive way," which he had done in other cases (PCR Tr. 16). But because McMullen "still had a pending attempted murder charge and three other drug charges," counsel "didn't think that mitigation would stack up" in this case (PCR Tr. 16).

As far as McMullen's mental health, counsel had no reason to think that he should have had McMullen evaluated. In the PSR, McMullen described his mental health as "okay" (DA App. 175). Even McMullen was apparently surprised when the psychologist diagnosed him with mental illnesses during the post-conviction

---

[8] McMullen suggests that his counsel "performed no investigation into [his] background beyond reading the PSR" before mentioning his counsel's conversations with his grandmother two sentences later (Doc. 23 at 34).

proceedings (*see* App. 224). And it would not have been surprising that McMullen "had some concerns about depression" considering that he was facing decades in prison in this case and charges in two other cases, including for attempted murder (DA App. 175).

But counsel did know that the allegation that McMullen was a habitual offender "was no good" (PCR Tr. 8). He raised that issue with the State after the jury verdict (PCR Tr. 8). The State agreed to dismiss the allegation (Tr. 491–92; PCR Tr. 8). If counsel had not done his homework and notified the State, then McMullen could have been sentenced to an additional 30 years. *See* Ind. Code § 35-50-2-8(a) (2005).[9]

McMullen's counsel also convinced the trial court to vacate one of the cocaine counts (Tr. 493–94, 499). Counsel corrected a mistake in McMullen's criminal history in the PSR (Tr. 490–91). And he pointed out that the PSR was internally inconsistent because it said that McMullen blamed others for his crimes and that he did not blame others for his crimes (Tr. 495). After the State argued that McMullen's criminal history justified a 50-year sentence (Tr. 492–93), McMullen's counsel relied on the PSR to argue that most of McMullen's adjudications and convictions were "for minor violations" (Tr. 494). Counsel also stressed the number of dismissals in McMullen's criminal history, which he argued "shows a serious pattern of charging my client when it's not justified" (Tr. 494). Although McMullen accepted responsibility for his crimes, counsel highlighted "the history which

_____

[9] The advisory sentence for a Class A felony was 30 years. I.C. § 35-50-2-4.

explains the behavior" (Tr. 496). That history included his mother's "boyfriend who abused him, abused his mother, abused his sister" (Tr. 495–96). Finally, counsel emphasized McMullen's statements about his positive plans for prison (Tr. 497). Counsel recommended a 35-year sentence with five years suspended to probation (Tr. 496). Although he ultimately could not overcome McMullen's egregious criminal history, the record shows that his effort was reasonable. The state court reasonably determined that counsel did not perform deficiently.

## CONCLUSION

The Court should dismiss this appeal or affirm the district court.

Respectfully submitted,

Jesse R. Drum
Assistant Section Chief, Criminal Appeals

*Attorney for Respondents-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that on November 14, 2022, the foregoing document was served upon opposing counsel via the Seventh Circuit CM/ECF system.

Jesse R. Drum
Assistant Section Chief, Criminal Appeals