No. 20-3273

---

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

RYAN T. McMULLEN,

Petitioner-Appellant,

v.

GARY DALTON and MELISSA STEPHENSON,

Respondents-Appellees.

---

On Appeal from the United States District Court
for the Southern District of Indiana
No. 2:19-cv-00356-JRS-MJD

---

## REPLY BRIEF OF PETITIONER-APPELLANT

---

Benjamin S. Morrell
 *Counsel of Record*
Michael A. Mayerck

TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Dr.
Suite 2600
Chicago, IL 60601
(312) 527-4000
bmorrell@taftlaw.com
mmayerck@taftlaw.com

*Pro Bono Counsel for Petitioner-Appellant*

# Table of Contents

**Page**

Table of Contents..................................................................ii

Table of Authorities ........................................................ iv

Introduction ...................................................................... 1

Argument .......................................................................... 3

I.    Respondents' Mootness Argument .................................... 3

    A.    Relevant factual background. ................................... 3

    B.    Legal standard. ......................................................... 3

    C.    Respondents fail to prove this appeal is moot. ........... 4

        1.    McMullen's original sentence is suspended, but persists.. ................................................................. 4

        2.    McMullen retains a concrete interest in the outcome of this appeal. ........................................................ 6

        3.    The state court's order is not an "intervening judgment" ..................................................... 11

II.    McMullen's Claim of Ineffective Assistance of Counsel at Sentencing.................................................................. 14

    A.    Deficient performance............................................ 14

        1.    De novo review is proper.. .............................. 14

        2.    Trial counsel's performance at sentencing was constitutionally deficient. ........................................... 15

    B.    Prejudice. ............................................................... 18

        1.    The Court should reject Respondents' categorical "zero chance" argument........................................... 18

        2.    The *Miller* line of cases has no bearing on this appeal or McMullen's *Strickland* claim. ........................... 20

3.   The new mitigating evidence is not cumulative of the PSR..................................................................... 21

4.   There is no nexus requirement for mitigating evidence ..... 23

5.   The Indiana Court of Appeals unreasonably determined the new mitigating evidence was cumulative.......... 23

Conclusion ........................................................................................ 24

Certificate of Compliance................................................................ 26

Certificate of Service ...................................................................... 27

## Table of Authorities

**Cases** **Page**

*Campbell-Ewald Co. v. Gomez,*
    577 U.S. 153 (2016) ..................................................................... 4

*Chafin v. Chafin,*
    568 U.S. 165 (2013) ............................................................... 4, 7

*Cochran v. Buss,*
    381 F.3d 637 (7th Cir. 2004) ................................................... 10

*Dorel Juv. Grp., Inc. v. DiMartinis,*
    495 F.3d 500 (7th Cir. 2007) ..................................................... 4

*Dunn v. Jess,*
    981 F.3d 582 (7th Cir. 2020) ................................................... 19

*Genesis Healthcare Corp. v. Symczyk,*
    569 U.S. 66 (2013) ..................................................................... 4

*Harper v. Brown,*
    865 F.3d 857 (7th Cir. 2017) ............................................... 20, 21

*Hawkins v. State,*
    951 N.E.2d 597 (Ind. Ct. App. 2011) ................................... 12, 13

*Jasper v. Braxton,*
    No. 7:11CV00210, 2012 WL 844442 (W.D. Va. Mar. 12, 2012) ........... 6, 7

*Kimbrough v. Neal,*
    941 F.3d 879 (7th Cir. 2019) ............................................... 20, 21

*Lane v. Williams,*
    455 U.S. 624 (1982) ..................................................................... 7

*Magwood v. Patterson,*
    561 U.S. 320 (2010) ............................................................... 11, 12

*McMullen v. State ("McMullen II"),*
    102 N.E.3d 947, 2018 WL 3131420 (Ind. Ct. App. June 27,
    2018) ........................................................................... 14, 23, 24

iv

*McMullen v. State ("McMullen I"),*
    950 N.E.2d 37, 2011 WL 250705 (Ind. Ct. App. June 23, 2011)..........19, 20

*Miller v. Zatecky,*
    820 F.3d 275 (7th Cir. 2016) ............................................................20, 21

*Porter v. McCollum,*
    558 U.S. 30 (2009)..............................................................14, 15, 17, 22

*Quintana v. Chandler,*
    723 F.3d 849 (7th Cir. 2013) ..................................................................14

*Rompilla v. Beard,*
    545 U.S. 374 (2005).......................................................................14, 22

*Scarborough v. Kellum,*
    386 F. Supp. 1360 (N.D. Miss. 1975).......................................................7

*Smith v. Bezy,*
    141 F. App'x 479 (7th Cir. 2005) ...........................................................10

*Smith v. Dir. of Dep't of Corr.,*
    No. 7:11CV00359, 2012 WL 2871421 (W.D. Va. July 12, 2012)...............7

*Spencer v. Kemna,*
    523 U.S. 1 (1998)..................................................................................11

*Strickland v. Washington,*
    466 U.S. 668 (1984).......................................................................passim

*Thaler v. Haynes,*
    559 U.S. 43 (2010)................................................................................15

*United States v. Shorter,*
    27 F.4th 572 (7th Cir. 2022) .............................................................10, 11

*Watkins v. U.S. Dist. Ct. for the Cent. Dist. of Ill.,*
    37 F.4th 453 (7th Cir. 2022) ................................................................8, 9

*Wharton v. Chappell,*
    765 F.3d 953 (9th Cir. 2014) ..................................................................17

*Wiggins v. Smith*,
    539 U.S. 510 (2003) ...........................................................................passim

*Williams v. Taylor*,
    529 U.S. 362 (2000) ........................................................................ 18, 22

*Wilms v. Hanks*,
    No. 2:05-CV-141-RLY-WGH, 2005 WL 2127441 (S.D. Ind.
    Aug. 31, 2005) .......................................................................................... 6

*Woolley v. Rednour*,
    702 F.3d 411 (7th Cir. 2012) ................................................................ 15

## Statutes

28 U.S.C. § 2241 .............................................................................................. 8

28 U.S.C. § 2254 .................................................................................... 15, 21, 23

Ind. Code Ann. § 35-38-1-17 ............................................................... 4, 12, 13

## Other Authorities

*2020 Indiana Probation Report: Summary and Statistics*, Indiana Office
    of Court Services, https://www.in.gov/courts/iocs/files/rpts-
    ijs-2020-probation.pdf ........................................................................ 3, 9

Allison Frankel, *Revoked: How Probation and Parole Feed Mass Incar-
ceration in the United States* (July 31, 2020) Human Rights
Watch, https://www.hrw.org/report/2020/07/31/re-
voked/how-probation-and-parole-feed-massincarceration-
united-states ............................................................................................. 9

Ind. R. App. P. 7 ....................................................................................... 20, 21

## Introduction

Petitioner Ryan McMullen walks into a bar—and sees his probation officer, Respondent Dalton, staring at him from across the room. Dalton files a petition to revoke McMullen's probation, which prohibits him from entering an establishment "whose primary function is the selling or promotion of alcohol." (D.E. 16-4 at 1.) The state court grants the petition and sends McMullen back to prison to serve out the remainder of the fifty-year sentence challenged in this appeal.

This scenario could happen today, fifteen years from now, or at any time before McMullen's long probation term ends. Respondents do not dispute this. Nevertheless, they argue that McMullen's appeal is moot because he received a "new" sentence when he was released and placed on probation. The state court's orders, however, provide that McMullen's fifty-year sentence has been suspended, not reduced, and his probation may be revoked "at any time." This shows that no "intervening judgment" has disturbed McMullen's original, now dormant sentence, and that McMullen maintains a concrete interest in the outcome of this appeal. Respondents therefore have not—and cannot—establish that this appeal is moot.

Respondents' merits arguments fail to meet many points discussed in McMullen's opening brief. They decline to even address several Supreme Court

cases referenced therein, mostly notably *Wiggins v. Smith*, given the many simi-larities it shares with McMullen's case. (*See* Br. of Pet'r at 35–37.) Respondents thus concede by their silence that these cases apply here and should closely guide the Court's review of McMullen's *Strickland* claim.

Respondents' attempts to rehabilitate Attorney Lewis's performance and the Indiana Court of Appeals' decision fail to persuade. Lewis's decision to focus on arguments other than mitigation at sentencing does not deserve deference as a strategic move because he did not conduct a reasonable investigation in the first place. That he accidentally gained some knowledge of McMullen's back-ground only further indicts his continued inaction. Respondents also shift focus to the state trial court's decision, but it made many of the same errors as the appellate court. They cite a line of cases from this Court concerning an Indiana appellate rule that has nothing to do with this appeal. And they attempt to rein-terpret the state appellate court's decision as either not making or not relying on the erroneous finding that the undiscovered mitigating evidence was cumulative of the PSR. Neither attempt succeeds. Because McMullen has established that Lewis performed deficiently and the Indiana Court of Appeals unreasonably ap-plied federal law when it found he was not prejudiced, habeas relief is warranted in this case.

## Argument

I.    **Respondents' Mootness Argument**

A.    **Relevant factual background**

McMullen's opening brief describes the recent developments in state court that led to his release from prison. (Br. of Pet'r at 25–26; *see also* D.E. 16-1.) In short, McMullen filed a renewed motion for modification of his sentence in the Superior Court of Grant County, which was granted in April 2021. (D.E. 16-2.) The court's order suspended the remainder of McMullen's fifty-year sentence, placed him on probation, and ordered his release to Grant County's Community Transition Program.[1] (D.E. 16-3.) McMullen's probation began in May 2021, to continue until September 2049. (D.E. 16-4 at 2; *see* D.E. 16-6.) After completing the transition program, McMullen became eligible for and then received a 33.33% probation reduction. (D.E. 16-6.) McMullen's term of probation will now end in July 2040. (*Id.*)

B.    **Legal standard**

Under Article III of the Constitution, federal courts may adjudicate only

---

[1] "Probation services in Indiana fall within the jurisdiction of the judiciary; the probationer remains under court jurisdiction until the term of probation is complete. Probation officers are local court employees and are subject to the appointment and supervisory power of the courts they serve." *2020 Indiana Probation Report: Summary and Statistics* at 1, Indiana Office of Court Services, https://www.in.gov/courts/iocs/files/rpts-ijs-2020-probation.pdf.

live cases or controversies, and "an actual controversy must be extant at all stages of review." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (citation omitted). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* (cleaned up). "A case becomes moot, however, only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) (cleaned up), *as revised* (Feb. 9, 2016). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted). "The party asserting mootness . . . bears the burden of persuasion." *Dorel Juv. Grp., Inc. v. DiMartinis*, 495 F.3d 500, 503 (7th Cir. 2007).

### C. Respondents fail to prove this appeal is moot.

#### 1. McMullen's original sentence is suspended, but persists.

Indiana law authorizes a court to "reduce or suspend the sentence [of a convicted person] and impose a sentence that the court was authorized to impose at the time of sentencing." Ind. Code Ann. § 35-38-1-17(e). Note that this provision allows a court to suspend a sentence without reducing it. *See id.* The state trial court's order granting McMullen's renewed motion to modify his sentence pursuant to this statute did just that. It "modified" his sentence thus:

4

"The remainder of Defendant's executed sentence under 27C01-0904-FA-134 is suspended . . . ." (D.E. 16-3 at 3.) The court also noted that it "reserve[d] the right to modify probation to informal probation, or to shorten his suspended sentence, if Defendant has achieved all of the recommendations of his Probation Case Plan and has maintained an exemplary conduct record." (*Id.* at 3–4.) Thus, this order suspended McMullen's sentence, but did not reduce it.

The court's subsequent orders have defined and changed the conditions of McMullen's probation, but have not explicitly reduced his now-suspended sentence. First, the court's Order Imposing Conditions of Probation did not include the word "sentence." It only described McMullen's probation, stating that it would end on September 28, 2049. (D.E. 16- 4 at 2.) Second, the court's May 2022 order modifying conditions of probation explicitly modified only the term of his probation, stating that "[t]he new term or [sic] probation shall begin on 2/26/2022 and end 7/18/2040." (*Id.)*

The distinction between sentence and probation term is critical here. The former remains set, while the latter is malleable. The Order Imposing Conditions of Probation made clear that the court "may at any time revoke, modify or extend [McMullen's] probation." (D.E. 16-4 at 2.) So there is no guarantee that McMullen's probation will actually end in 2040. Additionally, the order stated:

> A Petition for Revocation of Probation may be filed within one (1) year of termination of my probation or forty-five (45) days after the

5

state receives notice of the violation, whichever comes first. If I am arrested on a warrant for probation violation, I will waive extradition to the State of Indiana and this Court. If a Petition for Revocation is filed prior to my termination date, I am still responsible for all conditions of probation until the violation is resolved.

(D.E. 16-4 at 2 (emphasis added).) The May 2022 order modifying conditions of probation contained similar language regarding a petition to revoke probation. (D.E. 16-6 at 2.) Meanwhile, McMullen's fifty-year suspended sentence remains in place.

### 2.     McMullen retains a concrete interest in the outcome of this appeal.

Respondents have not shown that McMullen's appeal is moot. Multiple district courts, including one in Indiana, have pinpointed the moment at which a habeas petition becomes moot following the imposition of a suspended sentence: after the suspended sentence has expired. *See, e.g.*, *Jasper v. Braxton*, No. 7:11CV00210, 2012 WL 844442, at *3 (W.D. Va. Mar. 12, 2012) (dismissing petition as moot after the state court's authority "to revoke the suspended sentence for any violations committed during the suspension period . . . expired" and a result, the petitioner "no longer face[d] any potential sentence of detention pursuant to the . . . conviction"); *Wilms v. Hanks*, No. 2:05-CV-141-RLY-WGH, 2005 WL 2127441, at *1 (S.D. Ind. Aug. 31, 2005) ("Although the imposition of a suspended sentence is now understood to

constitute 'custody' sufficient to support a claim for habeas relief, such a claim becomes moot if the period of suspension passes and has not been enforced or imposed, because the 'custody' has ended." (citations omitted)); *Scarborough v. Kellum*, 386 F. Supp. 1360, 1368–69 (N.D. Miss. 1975), *aff'd*, 525 F.2d 931 (5th Cir. 1976). This is consistent with the Supreme Court's approach in *Lane v. Williams*, which Respondents cite in their brief. 455 U.S. 624, 631 (1982) ("Since respondents elected only to attack their sentences, and *since those sentences expired* during the course of these proceedings, this case is moot." (emphasis added)); (*see* Br. of Resp'ts at 11).

McMullen's suspended sentence has not "expired," as Respondents claim, and will not for many years. (Br. of Resp'ts at 12; *see* D.E. 16-6 at 2.) A live controversy still exists here because McMullen "may be reincarcerated if he violates the terms and conditions of his suspended sentence." *See Jasper*, 2012 WL 844442, at *2. The threat of reincarceration under the very sentence challenged in his habeas petition sustains McMullen's "concrete interest . . . in the outcome of the litigation." *Chafin*, 568 U.S. at 172 (citation omitted). "Because he has suspended sentences, . . . his petition is not moot." *Smith v. Dir. of Dep't of Corr.*, No. 7:11CV00359, 2012 WL 2871421, at *1 n.1 (W.D. Va. July 12, 2012).

Resisting this clear line of demarcation between live controversy and

mootness, Respondents cite this Court's recent decision in *Watkins v. United States District Court for the Central District of Illinois*, but that case is readily distinguishable. 37 F.4th 453 (7th Cir. 2022); (*see* Br. of Resp'ts at 13). There, the petitioner was serving a federal sentence of life imprisonment and moved for resentencing under the First Step Act. *Watkins*, 37 F.4th at 457. The district court "resentenced him to time served and imposed a reduced eight-year term of supervised release." *Id.* As a result, the life sentence the petitioner challenged in his § 2241 petition was extinguished by the resentencing, and there was no risk that he would have to return to prison to serve out the remainder of that sentence. Instead, he argued that the challenge to his sentence was not moot because "a favorable decision on the merits here could lead to a further reduction in his supervised release term." *Id.* at 455. The Court found this argument "too speculative to keep the case alive," *id.,* and walked through the many steps in the "attenuated chain of events built on escalating levels of speculation" that it would take to "picture any effective relief":

> First, as a preliminary matter, if we vacated Watkins' sentence, the district court would then have to resentence Watkins to twenty years' imprisonment—since that is the mandatory minimum he would have been subject to based on his predicate federal conviction alone. See 21 U.S.C. § 841(b)(1)(A) (2004). (The reduced mandatory minimum sentences under section 401 of the First Step Act did not automatically apply to already-sentenced defendants.) Watkins would then need to re-apply for relief under the First Step Act. The district court would then have to hold another First Step

Act hearing, weigh the relevant factors, and conclude that Watkins was entitled to a reduced sentence even lower than the fifteen years he already served. Finally, one of two things would need to happen. Either the district court would have to exercise its considerable discretion under 18 U.S.C. § 3583(e) to reduce Watkins' term of supervised release to less than eight years or Watkins would have to violate his supervised release conditions and use the excess prison time he served as banked time against any new term of imprisonment. At each step, Watkins can only speculate that he might benefit from a decision on the merits.

*Id.* at 458–59.

Here, the chain is much more direct. McMullen's original fifty-year sentence is still intact, just suspended. That suspended sentence will continue to hang over him for the next eighteen years—longer if the court extends his probation, which it can do at a whim. Respondents may petition the state court to revoke McMullen's probation and send him back to prison at any time, or the court may do so *sua sponte.* This is not a speculative or remote possibility. Since 2011, revocations have accounted for between 24% and 34% of all felony probation dispositions in Indiana.[2] Nationally, "45 percent of all US state prison admissions stemmed from probation and parole violations."[3] Moreover, the conditions of McMullen's probation are detailed and onerous. McMullen is

---

[2] *2020 Indiana Probation Report* at 10.

[3] Allison Frankel, *Revoked: How Probation and Parole Feed Mass Incarceration in the United States* (July 31, 2020) Human Rights Watch, https://www.hrw.org/report/2020/07/31/revoked/how-probation-and-parole-feed-massincarceration-united-states.

prohibited from consuming alcohol, visiting any bar or liquor store, visiting any jail or prison, and leaving the state without court permission. He must periodically report to his probation officer (Respondent Dalton), consent to searches, seizures, and visits from Dalton at any time, and submit to drug testing. (D.E. 16-4 at 2–3.) Even though McMullen's conduct on probation has been exemplary, there are many pitfalls here, and they will remain in his path for a very long time.

Thus, McMullen "continues to suffer collateral consequences that may be redressed in a petition for habeas corpus." *Smith v. Bezy*, 141 F. App'x 479, 481 (7th Cir. 2005); *see Cochran v. Buss*, 381 F.3d 637, 640 (7th Cir. 2004). Respondents' citation to *United States v. Shorter* does not move the needle, either. 27 F.4th 572 (7th Cir. 2022); (*see* Br. of Resp'ts at 13). There, the petitioner appealed the denial of his motion for compassionate release, but then "the Bureau of Prisons transferred Mr. Shorter out of prison to serve the remainder of his term of imprisonment in home confinement." *Shorter*, 27 F.4th at 575. Both parties opined "that the case is moot because Mr. Shorter is not in any Bureau of Prisons facility, including a residential reentry center." *Id.* The Court agreed: "Mr. Shorter requested a modified sentence so he would no longer be in prison. He is no longer in prison, so there is no further relief that a court can grant him." *Id.* at 576.

10

As discussed above, the fifty-year sentence challenged in McMullen's habeas petition is still in place and there is a real possibility that he could be returned to prison to complete it. The intact nature of the original sentence and the ease with which McMullen's probation can be revoked distinguish this case from *Shorter* and *Spencer v. Kemna*, 523 U.S. 1 (1998), cited therein. *Compare* (D.E. 16-4 at 2 (stating that the court may revoke McMullen's probation "at any time")), *with Spencer*, 523 U.S. at 15 (rejecting as too speculative the released petitioner's contention that the challenged parole violation and revocation might be used in a separate proceeding to increase a sentence stemming from a hypothetical future criminal conviction).

### 3.     The state court's order is not an "intervening judgment."

Respondents also argue that the state court's order suspending McMullen's sentence and placing him on probation is an "intervening judgment" that moots this appeal. (Br. of Resp'ts at 12.) The first case they cite, *Magwood v. Patterson*, is distinguishable because there, a federal district court vacated the petitioner's death sentence based on the state trial court's "failure to find statutory mitigating circumstances relating to Magwood's mental state." 561 U.S. 320, 326 (2010). Then, the state court held a new sentencing proceeding, sentenced Magwood to death again, and stated that this new "judgment and sentence were the result of a complete and new assessment of all of the evidence, arguments of

11

counsel, and law." *Id.* (cleaned up).

It's true that in many instances, a court that resentences a criminal defendant is free to impose a new sentence that is identical to the original one. But that is not what happened here. McMullen's sentence was never vacated. The state court's order was not "intervening" because McMullen's original, fifty-year sentence remained in place (in a suspended state) after it issued. That "[t]he court *could* have imposed any sentence that it 'was authorized to impose at the time of sentencing'" does not mean that it did in fact impose a new sentence. (Br. of Resp'ts at 12 (emphasis added) (quoting Ind. Code Ann. § 35-38-1-17(e)).) As for what actually happened during the trial court's hearing, Respondents can only speculate. (*See id.*)

Finally, Respondents' reference to a thought experiment posed by a state-court dissenter does not establish that the trial court's order here was an intervening judgment. (*See* Br. of Resp'ts at 13.) *Hawkins v. State* concerned the 365-day window—starting after a criminal defendant begins serving his sentence—during which a trial court could reduce or suspend the sentence. 951 N.E.2d 597 (Ind. Ct. App. 2011); *see* Ind. Code Ann. § 35-38-1-17 (2010). The Indiana Court of Appeals held that a defendant's resentencing does not "restart the clock" on that time period. *Hawkins*, 951 N.E.2d at 600. The decision indicates that Indi-

12

ana courts do *not* view modified sentences as intervening judgments, as Respondents have continually advanced, even in instances where the sentence was reduced rather than merely suspended. *See id.* at 598 (sentence of sixteen years with one year suspended reduced to ten years executed). The dissenting opinion relied on by Respondents is not the law. Moreover, the Indiana General Assembly has since amended the statute to remove the 365-day restriction for most convicted defendants. *See* Ind. Code Ann. § 35-38-1-17(e) (2015).

\*\*\*

McMullen still has not received the relief he requests in his habeas petition: a new, full sentencing hearing at which he can submit the voluminous evidence of his social background and mental health that his attorney failed to discover or present at his original sentencing hearing. Unless and until this Court acts, McMullen will continue to be deprived of that opportunity. And he will remain on probation, which can be extended whenever the state court wants, while the court can revoke his probation (or Respondents can petition for revocation) and send him back to prison "at any time." (D.E. 16-4 at 2.) If that happens, McMullen will once again be serving the fifty-year sentence that was imposed on him in violation of his Sixth Amendment right to counsel. This appeal is therefore not moot.

II.    **McMullen's Claim of Ineffective Assistance of Counsel at Sentencing**

A.    **Deficient performance**

1.    **De novo review is proper.**

As an initial matter, Respondents misread McMullen's opening brief as arguing "that *Strickland* performance and *Strickland* prejudice are separate claims." (Br. of Resp'ts at 24.) It is undisputed that McMullen has one *Strickland* claim with two components. And it is beside the point. The Supreme Court has made crystal clear that "*Strickland* claims are divisible" when it comes to applying AEDPA deference, even if the state court adjudicated the entire claim on the merits by deciding the petitioner failed to satisfy one prong. *Quintana v. Chandler*, 723 F.3d 849, 853 (7th Cir. 2013); *see Porter v. McCollum*, 558 U.S. 30, 39 (2009); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

Respondents argue that the Indiana Court of Appeals was not completely "silent on performance." (Br. of Resp'ts at 24.) That is also undisputed. *See McMullen v. State*, 102 N.E.3d 947, 2018 WL 3131420, *14 (Ind. Ct. App. June 27, 2018) ("*McMullen II*") ("We initially note that Lewis did argue several mitigating circumstances at McMullen's sentencing hearing . . . ."). But Respondents are wrong to suggest that the state court's passing comment is enough to trigger AEDPA deference. The key inquiry is whether any "prior decision found

14

[McMullen's] counsel effective." *Woolley v. Rednour*, 702 F.3d 411, 421 (7th Cir. 2012). The Indiana Court of Appeals made no such finding. Accordingly, as in *Porter v. McCollum*, "[b]ecause the state court did not *decide* whether Porter's counsel was deficient, we review this element of [the] *Strickland* claim de novo." 558 U.S. at 39 (emphasis added).

Even if AEDPA deference did apply to the deficient-performance prong of McMullen's *Strickland* claim (and it does not), the Indiana Court of Appeals' "decision" here would constitute an unreasonable application of clearly established federal law. "Under § 2254(d)(1), a habeas petitioner may obtain relief . . . if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (citation omitted). That case is *Wiggins v. Smith*, discussed at length in McMullen's opening brief. 539 U.S. 510; (*see* Br. of Pet'r at 35–39). Respondents make no attempt to distinguish *Wiggins*—or any other Supreme Court case discussed in the opening brief.

### 2. Trial counsel's performance at sentencing was constitutionally deficient.

Respondents argue that Attorney Lewis conducted a reasonable investigation at sentencing because he talked to McMullen's grandmother, Anna Parcher, on "more than one occasion," and learned about McMullen's "difficult

upbringing" from those conversations. (Long Appendix ("LA") at 254; *see* Br. of Resp'ts at 25.) First, Respondents' attempt to point out an inconsistency here in McMullen's opening brief falls flat. (*See id.* n.8.) Placed in context, Lewis gave the following testimony at the evidentiary hearing on McMullen's postconviction petition in state court:

> Q   Alright. Um, just a few questions about sentencing. Do you recall what you did to prepare for the sentencing hearing in this case?
>
> A   Uh, I really didn't do anything independently to develop any mitigation for sentencing. I just relied upon the presentence investigation report.
>
> Q   Okay. Were you aware that Ryan came from a seriously troubled background?
>
> A   Yeah I discussed Ryan with his grandmother on more than one occasion. I was well aware of his difficult upbringing.
>
> Q   Other than his grandmother, did you talk to any of his friends and family members?
>
> A   No.

(LA at 254.) The clear way to reconcile Lewis's statements that he spoke to McMullen's grandmother but "really didn't do anything *independently* to develop any mitigation for sentencing" beyond reading the PSR is that those conversations occurred at some point prior to the sentencing phase, not as a result of any investigation by Lewis to prepare for sentencing. (*Id.* (emphasis added).)

Stumbling upon some mitigating evidence despite putting forth zero effort

16

to investigate does not satisfy counsel's "obligation to conduct a thorough investigation of the defendant's background." *Porter*, 558 U.S. at 39 (cleaned up). If anything, the information provided by Ms. Parcher "would have led a reasonably competent attorney to investigate further." *Wiggins*, 539 U.S. at 534. Lewis did not do so. Instead, like in *Wiggins*, "counsel abandoned the[ ] investigation of petitioner's background after having acquired only rudimentary knowledge of his history from a narrow set of sources." *Id.* at 524.

Respondents contend that Lewis "had no reason" to think that McMullen should have been evaluated by a mental health professional. (Br. of Resp'ts at 25.) They argue it was reasonable to ignore McMullen's statement in the PSR expressing concern that he may be suffering from a recognized mental health disorder (depression) and instead credit his tepid characterization of his mental health as "okay." It was not. Respondents have no answer for McMullen's argument that the PSR's mentions of his referral to counseling as a child (including the reference to YOC) and alcohol abuse as an adult to cope with his cousin's murder should have spurred Lewis to investigate his mental health. Moreover, the conversations with Ms. Parcher regarding the abuse McMullen suffered as a child served as another red flag here, given the familiar correlation between "childhood abuse and . . . later mental problems." *See, e.g.*, *Wharton v. Chappell*, 765 F.3d 953, 972 (9th Cir. 2014).

Lewis's decision not to present mitigating evidence at sentencing was nei-
ther "reasonable" nor "strategic," as Respondents claim. (Br. of Resp'ts at 25.)
While "strategic choices made after thorough investigation of law and facts rel-
evant to plausible options are virtually unchallengeable," such "choices made
after less than complete investigation are reasonable precisely to the extent that
reasonable professional judgments support the limitations on investigation."
*Strickland v. Washington*, 466 U.S. 668, 690–91 (1984). Here, as in *Williams v.
Taylor*, "counsel's failure to uncover and present voluminous mitigating evi-
dence at sentencing could not be justified as a tactical decision to focus on" the
other arguments Lewis presented at sentencing precisely "because counsel had
not fulfilled [his] obligation to conduct a thorough investigation of the defend-
ant's background." *Wiggins*, 539 U.S. at 522 (cleaned up); *see Williams v. Taylor*,
529 U.S. 362, 396 (2000).

### B.    Prejudice

#### 1.    The Court should reject Respondents' categorical "zero chance" argument.

Respondents argue that had Lewis presented the undiscovered mitigating
evidence at sentencing, "the probability of a different outcome was zero" be-
cause "[t]he same judge who sentenced McMullen presided over his post-con-
viction proceedings" and found that the new evidence would not have changed

his sentence. (Br. of Resp'ts at 17; *see* LA at 55, 109.) Respondents cite no authority for the proposition that a habeas petitioner cannot show prejudice under *Strickland* simply because the same judge who sentenced him rejected his ineffective-assistance-at-sentencing claim during the postconviction stage. Respondents effectively ask the Court to review the prejudice determinations in two state-court decisions here: the state trial court's order rejecting McMullen's postconviction petition and the Indiana Court of Appeals' opinion affirming it. That is not how collateral review works. *See Dunn v. Jess*, 981 F.3d 582, 591 (7th Cir. 2020) (courts review "the last reasoned state court decision" on the merits).

In any event, the problem for Respondents is that the state trial court did not fairly "examine[ ] the mitigation evidence that McMullen argued his counsel should have presented." (Br. of Resp'ts at 17.) McMullen's opening brief explains that the trial court mischaracterized the nature and sources of much of the mitigating evidence—as only coming from McMullen's friends and family when the most important parts (i.e., the mental health reports) did not—and that the Indiana Court of Appeals repeated this error in its decision.[4] (Br. of Pet'r at 49–

---

[4] Even now, Respondents continue to quote the Indiana Court of Appeals' determination on direct appeal that "McMullen's maximum sentence is justified by his appalling juvenile and adult criminal record." *McMullen v. State*, 950 N.E.2d 37, 2011 WL 250705, at *6 (Ind. Ct. App. 2011) ("*McMullen I*"); (*see* Br. of Resp'ts at 17.) Both state courts at the postconviction stage also relied on this language in concluding McMullen did not suffer prejudice despite the fact that

50.) So the trial court's order denying McMullen's postconviction petition does not in fact provide definitive evidence that the court would have imposed the same statutory maximum sentence had it considered the mitigating evidence that Lewis failed to present.

As discussed in McMullen's opening brief, the state courts' mischaracterizations of the mitigating evidence Lewis failed to discover or present infected the rest of the analysis. That is the primary reason why the Indiana Court of Appeals' reweighing of the mitigating evidence against the aggravating circumstances was unreasonable here. It did not recognize what the evidence was and therefore could not fairly weigh it. The trial court's order fares no better because it made the same errors.

### 2.    The *Miller* line of cases has no bearing on this appeal or McMullen's *Strickland* claim.

The line of cases beginning with *Miller v. Zatecky* that Respondents discuss is inapposite here because all three cases concerned a petitioner's claim of ineffective assistance of appellate counsel based on a failure to argue the imposed sentence was "inappropriate" under Indiana Rule of Appellate Procedure 7(B). 820 F.3d 275, 276 (7th Cir. 2016); *see Kimbrough v. Neal*, 941 F.3d 879, 881 (7th Cir. 2019); *Harper v. Brown*, 865 F.3d 857, 861 (7th Cir. 2017). That is a specific

---

the court in *McMullen I* did not have before it any of the voluminous evidence developed at the postconviction stage.

state rule that raises an issue of state law. The Court in *Harper* explained that, while couched in *Strickland* terms, such a "claim is at bottom an attack on the state court's assessment of the merits of his Rule 7(B) argument." 865 F.3d at 861. Unlike the claims at issue in *Miller*, *Harper*, and *Kimbrough*, McMullen's claim does not seek to "use § 2254 to override a state court's conclusion that state law does not provide the petitioner with the benefit he sought." *Miller*, 820 F.3d at 277. It makes no argument concerning Indiana Appellate Rule 7(B). It is a federal claim at every level. Whether Attorney Lewis was ineffective at McMullen's sentencing under *Strickland* is an issue of purely federal law.

Under Respondents' reading of *Miller* and its progeny, every time a state court sentences a criminal defendant, it decides an issue of purely state law. This would insulate every claim of ineffective assistance of counsel at sentencing in a state court from collateral review. Section 2254 plainly allows such claims, and it allows McMullen's here.

### 3.    The new mitigating evidence is not cumulative of the PSR.

There is a fundamental difference in kind between the mitigating evidence in the PSR and the mitigating evidence developed at the postconviction stage. Although the PSR includes vague references to McMullen's background, it does not approach the vivid descriptions the numerous affidavits and reports provided, not to mentioned the affiants' expected live testimony, which Lewis failed

to procure. (*See* Br. of Pet'r at 47.) The PSR did not indicate the type of abuse McMullen endured at the hands of his mother and her boyfriends, how frequent the abuse was, or how severe the abuse was. For example, it did not provide the harrowing story where one of McMullen's mother's boyfriends put a gun to her head in front of him. (LA at 116.) Overall, this evidence is discussed in detail in McMullen's Statement of the Case. (Br. of Pet'r at 11–21.)

The new evidence does much more than give the PSR "color," as Respondents suggest. (Br. of Resp'ts at 19.) It provides an entirely new, vivid, and compelling view of McMullen's background and mental health. Further, Respondent does nothing to distinguish McMullen's case from *Porter*, *Rompilla*, *Wiggins*, or *Williams*. *See Porter*, 558 U.S. at 33–36; *Rompilla v. Beard*, 545 U.S. 374, 391–92 (2005); *Wiggins*, 539 U.S. at 516–17; *Williams* , 529 U.S. at 395. In addition, Respondents ignore the fact that all the references in the PSR came from McMullen himself. As stated in McMullen's opening brief, the sworn testimony of roughly twenty people and medical findings of two clinical psychologists corroborating McMullen's statements would have provided a much more comprehensive and compelling view of McMullen's background and mental health.[5] (Br. of Pet'r at 48.)

---

[5] Respondents also suggest that there are inconsistencies in the new evidence, e.g., whether McMullen witnessed his sister Sharmine being sexually abused.

### 4.    There is no nexus requirement for mitigating evidence.

As explained in McMullen's opening brief, requiring a causative nexus between mitigating evidence and the crimes of conviction is "contrary to" Supreme Court precedent under § 2254(d)(1). (Br. of Pet'r at 50–52.) The Indiana Court of Appeals improperly imposed such a nexus requirement when it dismissed McMullen's new mitigating evidence because, in the court's view, it "would have done nothing to account for or explain the illegal possession of marijuana and cocaine for which McMullen was convicted." *McMullen II*, 2018 WL 3131420, at \*12; (*see* Br. of Pet'r at 52). Respondents not only fail to respond to this argument; they repeat the state court's error. (*See* Br. of Resp'ts at 22 ("Even in [McMullen's] post-conviction affidavit, he did not try to link his mental health to his crimes").)

### 5.    The Indiana Court of Appeals unreasonably determined the new mitigating evidence was cumulative.

Respondents attempt to sidestep the Indiana Court of Appeals' erroneous finding that the mitigating evidence developed at postconviction was cumulative of the PSR. They argue that the court actually based its prejudice determination

---

(Br. of Resp'ts at 20–21.) Janita Glasser, the mother of three of McMullen's children, testified that McMullen witnessed Sharmaine being sexually abused "by his mother's boyfriend." (LA at 216.) Sharmaine testified that only *Ronnie Persuad* "never did anything sexual." (*Id.* at 134.) Glasser could have been referring to other boyfriends in her statement, namely, Rodney Fouce or Derrick Morgan.

solely on its conclusion that McMullen's criminal history vastly outweighed any mitigating evidence he would have presented had Lewis performed competently. (Br. of Resp'ts at 23.) As discussed elsewhere, that argument has its own problems. (*See* Br. of Pet'r at 49–57.) But Respondents cannot escape the court's explicit determination that "because of the presentence investigation report, the sentencing court was already well aware of McMullen's background and any mental health concerns."[6] *McMullen II*, 2018 WL 3131420, at *11. As discussed, it was not. (Br. of Pet'r at 57–59.)

## Conclusion

For the reasons discussed above and in McMullen's opening brief, the Court should reverse the district court's judgment and remand with instructions to enter an order granting the writ of habeas corpus unless the State of Indiana provides McMullen a new sentencing hearing within ninety days.

Filed: December 5, 2022.

Respectfully submitted,

RYAN T. MCMULLEN,
*By Counsel*

By    s/    *Benjamin S. Morrell*
Benjamin S. Morrell

---

[6] Respondents also attempt to reinterpret that sentence to mean that the trial court did know that there were not any mental health concerns discussed in the PSR. (Br. of Resp'ts at 23.) That interpretation simply does not make sense.

Michael A. Mayerck
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Dr.
Suite 2600
Chicago, IL 60601
(312) 527-4000
bmorrell@taftlaw.com
mmayerck@taftlaw.com

*Pro Bono Counsel for Petitioner-Appellant*

## Certificate of Compliance

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that the foregoing document complies with the type-volume limitation of Rule 32(a)(7)(B)(ii), as modified by Circuit Rule 32(c). It contains 5,582 words.

I further certify that the foregoing document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6), as modified by Circuit Rule 32(b). It has been prepared using Microsoft Word 2016 in the proportionally spaced typefaces of Gill Sans MT (headings and captions) and Calisto MT (body), both in 14-point font size.

Dated: December 5, 2022.

By    s/    *Benjamin S. Morrell*
Benjamin S. Morrell
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Dr.
Suite 2600
Chicago, IL 60601
(312) 527-4000
bmorrell@taftlaw.com

*Pro Bono Counsel for Petitioner-Appellant*

## Certificate of Service

I certify that on the date listed below, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.


Dated: December 5, 2022.

By    s/    *Benjamin S. Morrell*
        Benjamin S. Morrell
        TAFT STETTINIUS & HOLLISTER LLP
        111 E. Wacker Dr.
        Suite 2600
        Chicago, IL 60601
        (312) 527-4000
        bmorrell@taftlaw.com

        *Pro Bono Counsel for Petitioner-Appellant*